1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MCGUIREWOODS LLP**
Alicia A. Baiardo SBN #254228
abaiardo@mcguirewoods.com
Todd J. Dressel SBN #220218
tdressel@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944

Amy Morrissey Turk (*pro hac vice granted*)
aturk@mcguirewoods.com
101 West Main Street, Suite 9000
Norfolk, VA 23510
Telephone: 757.640.3700

*Attorneys for Defendants*
*Wells Fargo Bank, N.A. and Wells Fargo & Co.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE WAGMAN-GELLER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., WELLS FARGO & CO, AMERICAN ARBITRATION ASSOCIATION, INC., and DOES 1 through 5, inclusive,<br><br>Defendant. | CASE NO. 3:24-cv-06778-SK<br><br>The Hon. Magistrate Judge Sallie Kim<br><br>**DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS WELLS FARGO BANK, N.A. AND WELLS FARGO & CO'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER** |

CASE NO. 3:24-cv-06778-SK

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

1.     I am an attorney licensed to practice in the state of California and a member of the law firm of McGuireWoods LLP, counsel for Defendants Wells Fargo Bank, N.A. and Wells Fargo & Co. I have personal knowledge of the facts set forth herein and if called as a witness could and would testify competently to these facts under oath.

2.     On November 25, 2020, McCune Law Group ("MLG") filed a class action complaint on behalf of Mosanthony Wilson ("Wilson") and all others similarly situated, alleging that Wells Fargo violated the requirements of the Federal Electronic Funds Act ("EFTA"), its implementing regulation at 12 C.F.R. ¶ 1005.1, *et seq.* ("Regulation E") and California Business & Professions Code § 17200, *et seq.* ("California UCL"). *See Wilson v. Wells Fargo & Co.*, Case No. 3:20-cv-02307-RBM-WVG (S.D. Cal. filed Nov. 25, 2020) [hereinafter *Wilson*]. In response to the *Wilson* putative class action complaint filed in the Southern District of California, Wells Fargo moved to compel Wilson's dispute to arbitration on an individual basis, as required by the arbitration agreement between Wilson and Wells Fargo. *Wilson* Dkt. No. 21. The Court granted Wells Fargo's motion to compel. *Wilson v. Wells Fargo & Co.*, No. 20-CV-2307-DMS-WVG, 2021 WL 1853587, at *2-3 (S.D. Cal. May 10, 2021). The case was subsequently resolved in arbitration, and the arbitrator found that Wilson did not prove his Regulation E and California UCL claims and that Wells Fargo was the prevailing party in the matter (the "Wilson Final Award"). A true and correct copy of the Wilson Final Award is attached hereto as **Exhibit 1**. The Court confirmed the Wilson Final Award without objection. *Wilson v. Wells Fargo & Co.*, No. 320CV02307RBMWVG, 2022 WL 4125220, at *1 (S.D. Cal. Sept. 9, 2022).

3.     As the *Wilson* arbitration was nearing completion, MLG submitted arbitration demands against Wells Fargo on behalf of 13 individual claimants (the "13 Demands"). Shortly thereafter, on April 13, 2022, MLG began its mass arbitration[1] campaign against Wells Fargo by

---

[1] In "mass arbitrations," a law firm asserts claims individually in arbitration on behalf of often thousands of individuals through usually identical demands on behalf of individuals. *See* 1 Alt. Disp. Resol. § 8:22 (4th ed. 2023). Most arbitration agreements require that defendants pay the majority of the administrative fees—which can result in the defendant having to pay millions of dollars in initial administrative filing fees before any ruling on the merits of the dispute have been

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

filing 497 additional arbitration demands against the bank with AAA. Since that time, MLG has filed nearly 4,000 demands on behalf of individuals it claims to represent, including Ms. Wagman-Geller. On December 30, 2022, as part of MLG's mass arbitration, Ms. Wagman-Geller filed her demand against Wells Fargo (the "Arbitration Demand") and included a copy of Wells Fargo's Deposit Account Agreement dated October 15, 2021 (the "October 2021 Account Agreement"). Ms. Wagman-Geller's Account Agreement governs the relationship between Ms. Wagman-Geller and Wells Fargo, and includes provisions requiring arbitration of disputes between the parties. As permitted by the terms of Ms. Wagman-Geller's agreement, the terms of her Account Agreement were amended and modified over the years in which she held her account. The October 2021 Account Agreement is a subsequent version to the agreement she originally entered into upon opening her account in 2011. A true and correct copy of Ms. Wagman-Geller's Arbitration Demand is attached hereto as **Exhibit 2**. However, the October 2021 Account Agreement was amended pursuant to the terms of the Account Agreement before Ms. Wagman-Geller submitted her Arbitration Demand, making the operative agreement the November 15, 2022 Wells Fargo Deposit Account Agreement (the "November 2022 Account Agreement"). The November 2022 Account Agreement does not contain any material changes to the October 2021 Account Agreement as

---

litigated, much less resolved. *See, e.g.,* Appellants' Brief, *Uber Techs., Inc., v. Am. Arbitration Ass'n, Inc.*, No. 655549/21, 2022 WL 1125962, at *31 (N.Y. App. Div. Jan. 3, 2022) (discussing AAA's intent to invoice Uber more than $91 million in connection with mass arbitration campaign consisting of 31,560 boilerplate arbitration demands); *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1064 (N.D. Cal. 2020) (discussing AAA's invoice of nearly $12 million in administrative fees to DoorDash in connection with mass arbitration campaign); Mem. of Law in Supp. of Def. Chegg, Inc.'s Mot. for Clarification or Modification of the Court's April 27, 2020 Order at 16-18, *Lyles v. Chegg, Inc.*, No. 1:19-cv-03235-RDB (D. Md. Aug. 4, 2020), Dkt. No. 26-1 (discussing AAA's charging over $7 million in filing fees as part of mass arbitration campaign). As a result of this fee structure, there is the potential for abuse where the plaintiff-side law firm attempts to force high-dollar settlements from businesses that have nothing to do with the merits of the alleged claims, but instead are driven by the desire to avoid the costs the defendant must incur to pay for arbitration itself. *See* Br. of the Chamber of Com. of the U.S. as *Amicus Curiae* in Supp. of Defs.-Appellants and Reversal at 9-18, *MacClelland v. Cellco P'ship*, No. 22-16020 (9th Cir. Nov. 28, 2022), Dkt. No. 20; *See also* Br. of Retail Litigation Center, Inc. as *Amicus Curiae* Supp. Appellants and Reversal at 2-25, *Wallrich, et al. v. Samsung Electronics America, Inc., et al.*, No. 23-2842 (7th Cir. Nov. 21, 2023), Dkt. No. 43.

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

relevant here, and contains a virtually identical provision requiring arbitration of disputes between the parties (the "Arbitration Agreement").

4. On April 22, 2022, AAA informed MLG and counsel for Wells Fargo via letter (the "April 22 AAA Letter") that the additional demands would be subject to AAA's Supplementary Rules for Multiple Case Filings (the "Supplementary Rules").[2] True and correct copies of the April 22 AAA Letter and the Supplementary Rules are attached hereto as **Exhibits 3 and 4**. The parties and AAA agreed that the 13 Demands should be treated as part of the mass arbitration as well. On April 25, 2022, MLG sent a letter to AAA wherein it stated that "[a]lthough not filed simultaneously with our recent multi case filing, *we request that all of these cases be consolidated and otherwise subject to AAA's Supplementary Rules for Multiple Case Filings pursuant to Rule MC-1(c) thereto*" (the "April 25 MLG Letter"). (Emphasis added). A true and correct copy of the April 25 MLG Letter is attached hereto as **Exhibit 5**. On May 6, 2022, Wells Fargo sent a letter to AAA responding to the April 25 MLG Letter stating that it did not object to the implementation of the Supplementary Rules, but that it expected AAA to abide by the arbitration agreements between the parties (the "May 6 Wells Fargo Letter"). A true and correct copy of the May 6 Wells Fargo Letter is attached hereto as **Exhibit 6**.

5. Thereafter, MLG continued to file individual arbitration demands in tranches. The demands filed as part of MLG's mass arbitration campaign (including Ms. Wagman-Geller's) were virtually identical and did not specify which state consumer fraud law or statutory section applied to the individual claimant's arbitration. The total number of individual arbitration demands MLG has submitted with AAA against Wells Fargo as of May 28, 2024 is 3,965. AAA confirmed receipt of each tranche of demands to MLG and Wells Fargo and continued to treat all these filings as part of the mass arbitration subject to the Supplementary Rules.

---

[2] AAA has amended the Supplementary Rules several times since MLG initiated its mass arbitration and changed their name to the Mass Arbitration Supplementary Rules (the "Amended Supplementary Rules"). The most recent amendment occurred on April 1, 2024. The Amended Supplementary Rules are not applicable to MLG's mass arbitration against Wells Fargo and are therefore not relevant to this dispute.

-3-    CASE NO. 3:24-cv-03173-JST

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

6.      On July 12, 2022, AAA informed the parties that AAA's Consumer Rules ("Consumer Rules") applied and reiterated that the Supplementary Rules would apply to the demands MLG continued to file in the mass arbitration (the "July 12 AAA Letter"). A true and correct copy of the July 12 AAA Letter is attached hereto as **Exhibit 7**. On July 29, 2022, AAA confirmed via letter the appointment of the Honorable Anita Rae Shapiro to serve as Process Arbitrator for mass arbitration (the "July 29 AAA Letter").[3] A true and correct copy of the July 29 AAA Letter is attached hereto as **Exhibit 8**. The Process Arbitrator's jurisdiction includes deciding filing requirements. Ex. 4 at MC-6(d)(i). MLG did not object to AAA's application of the Supplementary Rules to the mass arbitration in writing or orally, nor did MLG object to the appointment of the Process Arbitrator.

7.      After AAA determined the mass arbitration would be governed by the Supplementary Rules, it began invoicing Wells Fargo for the initial administrative filing fees associated with the demands. AAA invoiced Wells Fargo on ten separate occasions (April 22, 2022, May 6, 2022, May 18, 2022, June 23, 2022, July 18, 2022, August 12, 2022, October 7, 2022, October 26, 2022, May 31, 2024, and September 5, 2024) for a total amount of $537,625.00 in initial administrative filing fees (collectively, the "Invoices"). True and correct copies of the Invoices are attached hereto as **Exhibit 9**. These fee payments include invoiced fees for Ms. Wagman-Geller's arbitration. Wells Fargo paid each of the Invoices, and has no outstanding or unpaid invoices with AAA.

8.      Soon after MLG began its mass arbitration campaign against Wells Fargo, it became clear to Wells Fargo that MLG was not performing adequate due diligence to confirm that claimants (1) had enrolled in Wells Fargo's Debit Card Overdraft Service ("DCOS") (i.e., the overdraft program that is the focus of the claims in the mass arbitration)—a pre-requisite to bringing their claims; (2) had incurred any overdraft fees subject to Regulation E; or (3) in some cases, even had

---

[3] The Process Arbitrator was appointed through a rank and strike process. AAA provided Wells Fargo and MLG with a list of 7 potential candidates and allowed each side to strike two candidates and then rank the remaining five in order of the parties' preference.

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

an account with Wells Fargo. Additionally, along with its clients' arbitration demands, MLG was also submitting an "authorization" form for many claimants purporting to request the release of certain account documents. These authorizations provided the date that the individual retained MLG to represent them in arbitration against Wells Fargo, the claimant's name, address, email, and a place for the claimant to provide their Wells Fargo account number. The authorizations submitted by MLG, however, established MLG's blatant failure to vet its clients' claims. This included, for example, claimants listing their Wells Fargo account numbers as: "i don't have one"; "Idk"; "xxxxxxxxxx"; "XXX…"; "Not giving my account"; "None"; "999999999"; "N/A"; "[claimant's last name]"; "Not sure"; "Blank"; "000000000". True and correct copies of the above-described authorizations are attached hereto as **Exhibit 10**.

9.      Further, Wells Fargo's preliminary review of the demands submitted by MLG indicated that many claimants never even agreed to participate in DCOS. In some cases, Wells Fargo was unable to find any checking account associated with the claimants. Whether a claimant has opted into DCOS can be answered by a cursory review of the claimant's bank statement, which specifies if the claimant is enrolled in the service. A true and correct copy of a redacted bank statement is attached hereto as **Exhibit 11**. The bank statements further itemize every transaction, including transactions covered by Regulation E which resulted in an overdraft fee. *See id.* This information cannot be outside of MLG's grasp, as MLG's advertising specifically requested that individuals seeking to qualify as claimants for arbitration against Wells Fargo submit a Wells Fargo bank statement to MLG for review.[4] *See Overdraft Fee Claims Against Wells Fargo*, https://web.archive.org/web/20240528172318/https://mccunewright.com/overdraft-fee-claims-against-wells-fargo/ (last visited February 13, 2025) ("If you are a Wells Fargo customer who has been victimized by unfair overdraft fees, contact our team to see if you qualify to recover your money. To qualify quickly, submit your most current Wells Fargo bank statement to our team.").

10.      It appears that many claimants found their way to MLG through that advertising on

---

[4] MLG has subsequently removed the webpage and recently stopped advertising.

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

MLG's website. MLG's advertising has evolved over time but at one point claimed that "[a]ny Wells Fargo customer who received an overdraft fee within the past 12 months can qualify" to join the mass arbitration campaign against Wells Fargo, and then went on to explain that each arbitration it files forces Wells Fargo to pay "a whopping $4,000.00, not including their attorneys' fees!" Thus, MLG explained, "bringing hundreds of thousands of arbitrations, each resulting in thousands paid by Wells Fargo, means consumers can finally hit one of the world's largest corporations where it hurts." A true and correct copy of a screen capture of MLG's advertising taken on June 30, 2022 is attached hereto as **Exhibit 12**.

11. As a result, pursuant to AAA's Supplementary Rules, Wells Fargo raised the issue of the insufficiency of information provided in the demands with the Process Arbitrator during an initial conference call on August 24, 2022. Wells Fargo pointed out that MLG's method of procuring clients and filing demands had likely resulted in hundreds of demands being submitted on behalf of individuals with no legitimate claims against Wells Fargo, thereby requiring Wells Fargo to pay hundreds of thousands of dollars in nonrefundable filing fees for arbitrations involving individuals who may have never enrolled in the overdraft program at issue, never been assessed an overdraft fee subject to Regulation E during an actionable limitations period, or who may never have even had an account with Wells Fargo.

12. On the call, the Process Arbitrator recognized the issues being raised by Wells Fargo and questioned whether certain basic information regarding each claimant's individual dispute with Wells Fargo would be helpful to the efficient and economical administration of all claims. In doing so, the Process Arbitrator opined that claimants' current demands could be amended—and future demands be required—to meet the basic information required of a demand which is set forth in the Consumer Rules so that information establishing legitimate claims was provided. MLG requested briefing on the topic, arguing that the Process Arbitrator lacked the jurisdiction and authority to rule on the issue. The Process Arbitrator granted the briefing request and set a briefing schedule for the parties.

13. On September 7, 2022, Wells Fargo submitted a memorandum to the Process Arbitrator requesting that she, pursuant to Supplementary Rules MC-6(d)(i), (ii), and (v), enter an

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

order requiring claimants to provide basic information about each dispute prior to proceeding through the arbitration process (the "September 7 Wells Fargo Memo"). A true and correct copy of the September 7 Wells Fargo Memo is attached hereto as **Exhibit 13.** MLG submitted its response on September 21, 2022 (the "MLG September 21 Response"), and Wells Fargo submitted its reply on October 5, 2021 (the "October 5 Wells Fargo Reply"). True and correct copies of the MLG September 21 Response and the October 5 Wells Fargo Reply are attached hereto as **Exhibits 14 and 15.**

14.     The Process Arbitrator entered an order on October 27, 2022 ("the October 27 PA Order"), partially granting Wells Fargo's request for more basic information. A true and correct copy of the October 27 PA Order is attached hereto as **Exhibit 16.**

15.     Shortly after the October 27 PA Order was entered, MLG made clear that it would not abide by its terms. In a letter addressed to AAA's President and Chief Executive Office and Senior Vice President, General Counsel, and Corporate Secretary, stated its intention to challenge the arbitration agreement in a federal court filing (the "November 2 MLG Letter"). A true and correct copy of the November 2 MLG Letter is attached hereto as **Exhibit 17.** MLG then requested that AAA executives "voluntarily stay application of" the PA Order pending its forthcoming federal filing. *See id.*

16.     On November 8, 2022, Wells Fargo responded to the November 2 MLG Letter by pointing out that the request to stay the October 27 PA Order was improper, as the Supplementary Rules explicitly provide the Process Arbitrator exclusive jurisdiction to decide the subject of the October 27 PA Order and state that "[r]ulings by the Process Arbitrator will be final and binding upon the parties" (the "November 8 Wells Fargo Letter"). A true and correct copy of the November 8 Wells Fargo Letter is attached hereto as **Exhibit 18**. MLG replied to the November 8 Letter by informing AAA that although ***its claimants "consent to AAA arbitration pursuant to AAA rules,"*** it would move forward with filing claims with AAA that did not abide by the October 27 PA Order and would also file an action in federal court (the "November 10 MLG Letter"). A true and correct copy of the November 10 MLG Letter is attached hereto as **Exhibit 19**.

17.     On November 15, 2022, AAA sent a letter to the parties addressing MLG's objection

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

to the October 27 PA Order (the "November 15 AAA Letter"). A true and correct copy of the November 15 AAA Letter is attached hereto as **Exhibit 20**. Therein, AAA informed the parties that it would not be issuing an invoice for further case management fees for any matters until claimants submitted and served amended claims as required by the October 27 PA Order. *Id.* Nonetheless, MLG continued to file demands on behalf of new claimants that failed to meet the requirements of the October 27 PA Order.

18.     Accordingly, on November 22, 2022, Wells Fargo wrote to AAA asking it to confirm that, pursuant to the October 27 PA Order, no fees would be invoiced until the improperly submitted demands contained the information provided in the October 27 PA Order (the "November 22 Wells Fargo Email"). A true and correct copy of the November 22 Wells Fargo Email is attached hereto as **Exhibit 21**. AAA responded by requesting that the parties address the issue during a scheduled November 30, 2022 status conference with the Process Arbitrator.

19.     At the November 30, 2022 status conference, MLG informed the Process Arbitrator that it had not complied with the October 27 PA Order, and stated its intention to challenge the order in a federal district court. MLG also informed the Process Arbitrator and Wells Fargo that it intended to continue to submit new claims that did not meet the requirements of the October 27 PA Order. Wells Fargo then reiterated the Process Arbitrator's authority to rule on the matters in the October 27 PA Order and that under the Supplementary Rules, rulings by the Process Arbitrator are final and binding. The Process Arbitrator stated that invoicing of fees would be stayed until the October 27 PA Order is complied with, and ordered the parties to notify AAA within fifteen days of any order entered by a federal court regarding the matter. On December 1, 2022, the Process Arbitrator entered an order memorializing the status conference (the "December 1 PA Order"). A true and correct copy of the December 1 PA Order is attached hereto as **Exhibit 22**.

20.     On December 8, 2022, Wells Fargo wrote to AAA objecting to MLG's submission of demands on December 7, 2022, which did not meet the October 27 PA Order's filing requirements, and requested confirmation that the improperly submitted demands did not warrant imposition of AAA fees (the "December 8 Wells Fargo Email"). A true and correct copy of the December 8 Wells Fargo Email is attached hereto as **Exhibit 23**.

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

21.     On December 9, 2022, MLG wrote AAA asking it to confirm whether all of the demands submitted after the October 27 PA Order were deemed filed by AAA (the "December 9 MLG Email"). A true and correct copy of the December 9 MLG Email is attached hereto as **Exhibit 24**. AAA responded on December 13, 2022, stating that given MLG's forthcoming federal filing challenging the PA Order, it would await further direction from the district court as to how the arbitrations should or should not proceed (the "December 13 AAA Email"). A true and correct copy of the December 13 AAA Email is attached hereto as **Exhibit 25**.

22.     On December 13, 2022, MLG filed a Complaint in the United States District Court for the Southern District of California challenging the October 27 PA Order. *See Mosley, et al. v. Wells Fargo & Co., et al.*, No. 3:22-cv-01976-DMS-AGS (S.D. Cal. filed Dec. 13, 2022) [hereinafter *Mosley I*], at Dkt. No. 1 ("*Mosley I* Complaint"). The *Mosley* Complaint was filed on behalf of just four of MLG's then 3,300+ claimants who had filed demands as part of MLG's mass arbitration (the "*Mosley I* Plaintiffs"). The *Mosley I* Complaint alleged that each of the *Mosley I* Plaintiffs was enrolled in Wells Fargo's DCOS and was charged an overdraft fee subject to Regulation E. MLG did inform AAA of its filing of the *Mosley I* Complaint.

23.     On January 4, 2023, AAA reached out to the parties asking for a status update on the federal filing (the "January 4 AAA Email"). A true and correct copy of the January 4 AAA Email is attached hereto as **Exhibit 26**. That same day, Wells Fargo provided a detailed response to AAA and the Process Arbitrator, and informed AAA that given the limited scope of the *Mosley I* Complaint, Wells Fargo was "prepared to move forward with all claimant arbitrations" other than the *Mosley* Plaintiffs "as soon as those Claimants provide the information required in" the October 27 PA Order (the "January 4 Wells Fargo Letter"). A true and correct copy of the January 4 Wells Fargo Letter is attached hereto as **Exhibit 27**. MLG responded to the January 4 AAA Email by providing the case name and case number of the lawsuit, but did not address the January 4 Wells Fargo Letter or its request related to moving forward with arbitrations for claimants other than the *Mosley I* Plaintiffs (the "January 5 MLG Email"). A true and correct copy of the January 5 MLG Email is attached hereto as **Exhibit 28**. On January 13, 2023, AAA reiterated that, in light of the December 1 PA Order and the litigation between the parties regarding the enforceability of the

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

October 27 PA Order, it would wait for further direction from the *Mosley I* Court as to how the arbitrations should or should not proceed (the "January 13 AAA Email"). A true and correct copy of the January 13 AAA Email is attached hereto as **Exhibit 29**.

24.    On February 3, 2023, Wells Fargo moved to compel the *Mosley I* Plaintiffs to arbitration. *See Mosley I* at Dkt. Nos. 21, 21-1. On May 1, 2023, after full briefing, the District Court granted Wells Fargo's motion to compel arbitration (the "*Mosley I* DC Order*"). See Mosley v. Wells Fargo & Co.*, No. 22-CV-01976-DMS-AGS, 2023 WL 3185790 (S.D. Cal. May 1, 2023), *aff'd*, No. 23-55478, 2024 WL 977674 (9th Cir. Mar. 7, 2024).

25.    On May 17, 2023, Wells Fargo informed the Process Arbitrator of the District Court's order granting its motion to compel in *Mosley I* ("May 17 Wells Fargo Email"). A true and correct copy of the May 17 Wells Fargo Email is attached hereto as **Exhibit 30**. That same day, AAA set a June 8, 2023 status conference for the parties and the Process Arbitrator to discuss how to move forward with the mass arbitration in light of the *Mosley I* DC order.

26.    On May 26, 2023, MLG appealed the *Mosley I* DC Order. *Mosley I* at Dkt. No. 31. Wells Fargo informed the Process Arbitrator of the appeal prior to the status conference on June 8, 2023 (the "June 8 Wells Fargo Email"). A true and correct copy of the June 8 Wells Fargo Email is attached hereto as **Exhibit 31**. At the status conference, Wells Fargo reminded the Process Arbitrator that MLG should have had the information needed to comply with the October 27 Order prior to filing the arbitration demands in April 2022 and that MLG had failed to gather the necessary information during the nearly eight months since she entered the October 27 Order. On June 14, 2023, the Process Arbitrator entered a second order regarding MLG's failure to conduct diligence into its clients' claims, and failure to abide by the Process Arbitrator's October 27 Order (the "June 14 PA Order"). A true and correct copy of the June 14 PA Order is attached hereto as **Exhibit 32**. The June 14 PA Order confirmed that MLG had failed to comply with the October 27 PA Order. It then provided MLG dates certain to comply with the October 27 PA Order for three separate categories of Claimants: (1) claimants for whom Wells Fargo had paid the AAA administrative fees, MLG was required to comply on or by August 14, 2023; (2) claimants added to the case before June 14, 2023 for whom Wells Fargo had not yet paid administrative fees, MLG was required to

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

comply by September 13, 2023; and (3) claimants added after June 13, 2023, MLG must comply when the demand is submitted. The June 14 PA Order also held that any claimants who had not complied with the October 27 PA Order by the deadlines set forth in the June 14 PA Order "[we]re precluded from presenting any evidence that they 1) had a Wells Fargo account number for the account in issue, 2) they were enrolled in DCOS during the time period in issue and 3) incurred any overdraft fees for which they were wrongly charged." The June 14 PA Order further held that "[a]ny Claimants whose attorney of record has failed to sign an Amended Claim as required by California Code of Civil Procedure 128.7 are also precluded from presenting this evidence."

27.     Rather than abide by the Process Arbitrator's orders, on July 24, 2023, MLG submitted an unapproved motion to amend claimants' demands and the Process Arbitrator's prior orders (the "Motion to Amend"). A true and correct copy of the Motion to Amend is attached hereto as **Exhibit 33**. The Motion to Amend sought to "collectively" amend all claimants' claims "to encompass multiple Wells Fargo practices in addition to the Regulation E violations alleged therein." The Motion to Amend then stated that "Claimants seek relief *to the extent* that each has individually been affected *by one or more of* Wells Fargo's illegal and unfair practices." The Motion to Amend also attached one representative proposed Amended Claim to be submitted by each Claimant (the "Proposed Amended Claim"). A true and correct copy of the Proposed Amended Claim is attached hereto as **Exhibit 34.**

28.     On July 28, 2023, Wells Fargo informed AAA that it did not believe any applicable AAA rules permitted claimants to unilaterally submit the Motion to Amend and asked AAA to advise Wells Fargo on how it would proceed (the "July 28 Email"). A true and correct copy of the July 28 Email is attached hereto as **Exhibit 35**. On August 4, 2023, the Process Arbitrator entered an order acknowledging AAA's rules requiring the arbitrator's approval to file the Motion to Amend, deemed MLG's service of its motion a "request for the Arbitrator to allow it to be filed and considered," and requested a conference call to consider the motion (the "August 4 PA Order"). A true and correct copy of the August 4 PA Order is attached hereto as **Exhibit 36**. The conference was set for August 15, 2023.

29.     On August 14, 2023 MLG submitted a letter to the Process Arbitrator (the "August

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

14 Letter") with an attached spreadsheet purporting to comply with the June 14 PA Order (the "August 14 Spreadsheet"). True and correct copies of the August 14 Letter and August 14 Spreadsheet are attached hereto as **Exhibits 37 and 38**. The August 14 Spreadsheet includes four tabs, which MLG titled: (1) "Order Compliant Cases"; (2) "Amended Claim Cases"; (3) "Cases Still Working On"; and (4) "Cases Being Withdrawn." MLG then provided a short description of which claimants were included in each of the August 14 Spreadsheet's tabs. MLG provided that each tab represented the following: (1) "Order Compliant Cases" tab were claimants whom, "within the time frame provided by the [Process Arbitrator], [MLG] had the time and ability to confirm affirmative opt-in, account number, and a believed qualifying transaction"; (2) "Amended Claim Cases" tab were claimants who MLG "had the time and ability to confirm is a customer [of Wells Fargo] and has a transaction believed to be qualifying under the proposed amended complaint"; (3) "Cases Still Working On" tab were claimants not in the first two tabs but who MLG is still working with "to obtain information related to the account number, opt-in status, or qualifying transaction under the claim or proposed amended claim"; and (4) "Cases Being Withdrawn" tab were those claimants who were voluntarily withdrawing their claim. The "Order Complaint Cases" tab included 208 claimants. The "Amended Claim Cases" tab included 1,418 claimants. The "Cases Still Working On" tab included 966 claimants. The "Cases Being Withdrawn" tab included 5 claimants.

30.    On August 15, 2023, the Process Arbitrator held a hearing to discuss MLG's August 14 Letter and August 14 Spreadsheet. At the hearing, the Process Arbitrator stated that she was "troubled" by MLG's failure to perform diligence into its clients' claims. The Process Arbitrator also questioned MLG on what the "Qualifying" versus "Not Qualifying" terms meant under the column entitled "Incurred Overdraft Fee" in the "Amended Claim Cases" tab of the August 14 Spreadsheet. MLG failed to provide an adequate answer. Accordingly, later that day, the Process Arbitrator entered an order requesting that MLG submit an explanation of the "Amended Claim Cases" and "Cases Still Working On" tabs of the August 14 Spreadsheet, and specifically what MLG meant by "qualified" and "not qualified" in the "Amended Claims Cases" tab (the "August 15 Order"). A true and correct copy of the August 15 Order is attached hereto as **Exhibit**

**39**.

31.     On August 21, 2023, MLG submitted its clarification of the August 14 Spreadsheet (the "Clarification"). A true and correct copy of the Clarification is attached hereto as **Exhibit 40**. MLG's Clarification stated that claimants listed as "Qualifying" on the "Amended Claim Cases" tab are those who have "submitted evidence to [MLG] showing what is believed to be an overdraft fee" on a qualifying Regulation E transaction, but who "have not (or have not yet) provided a Wells Fargo statement showing that they were enrolled in DCOS." MLG then claimed that the claimants "were either enrolled by Wells Fargo in DCOS or were not enrolled in DOCS," and that "both [circumstances] would constitute a Regulation E violation." MLG requested that claimants listed as "Qualifying" move forward with their individual merit arbitration under their original demands **and** under the Proposed Amended Claim. The "Qualifying" claimants represented only 283 individuals out of the 1,418 total claimants listed on the "Amended Claim Cases" tab. MLG then explained that the "Not Qualifying" claimants on the "Amended Claim Cases" tab are those who incurred overdraft fees on transactions that did not qualify under a Regulation E claim. MLG claimed that the "Not Qualifying" claimants had provided "support" to MLG in the form of screen shots, activity pages, or statements, of what "is **believed** to be an overdraft or NSF fee assessed on a non-Regulation E transaction (e.g., recurring debit card, check, or ACH transaction)" and did not qualify under the original demand submitted for a Regulation E claim, but qualified for an unspecified claim under the Proposed Amended Claim. MLG requested that the "Not Qualifying" claimants move forward under the Proposed Amended Claim. The "Not Qualifying" claimants represented 1,135 individuals out of the 1,418 total claimants listed on the "Amended Claim Cases" tab.

32.     On September 13, 2023, MLG submitted another letter and spreadsheet purporting to comply with the June 14 PA Order (the "September 13 Letter" and "September 13 Spreadsheet"). True and correct copies of the September 13 Letter and September 13 Spreadsheet are attached hereto as **Exhibits 41 and 42**. Like the August 14 Spreadsheet, the September 13 Spreadsheet was split into four separate tabs: (1) "Order Compliant Cases"; (2) "Amended Claim Cases"; (3) "Cases Still Working On"; and (4) "Cases Being Withdrawn." MLG provided the following explanation

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

for each of the four tabs: (1) "Order Compliant Cases" tab were claimants whom MLG "believe[d] [we]re order compliant cases because of confirmation of opt-in by Wells Fargo documents or who have incurred an overdraft fee on what is believed is a Regulation E transaction"; (2) "Amended Claim Cases" tab were claimants whom MLG "believe[d] ha[d] qualifying transactions under the proposed amended claim"; (3) "Cases Still Working on" tab were claimants that MLG "ha[d] not yet been able to confirm to the order of proof required by the arbitrator that they have qualifying transactions that would include them in either Order Compliant Cases or Amended Claim Cases Spreadsheets"; and (4) "Cases Being Withdrawn" tab were claimants who were "voluntarily withdrawing their claim (without prejudice to refiling)." The "Order Complaint Cases" tab included 244 claimants. The "Amended Claim Cases" tab included 504 claimants. The "Cases Still Working On" tab included 605 claimants. The "Cases Being Withdrawn" tab included 5 claimants.

33. On September 22, 2023, Wells Fargo submitted its memorandum in response to the Clarification (the "September 22 Wells Fargo Memo"). A true and correct copy of the September 22 Wells Fargo Memo is attached hereto as **Exhibit 43**. In the September 22 Wells Fargo Memo, Wells Fargo argued that MLG's Clarification established MLG's failure to investigate claimants' claims prior to filing demands on their behalf and MLG's refusal to provide basic information required by the October 27 PA Order. Specifically, the Clarification confirmed that MLG submitted demands on behalf of at least 2,389 claimants who MLG could not establish had a claim for which they sought relief under their original demands—as each claimant had submitted an individual demand asserting a specific claim alleging that Wells Fargo violated Regulation E as to that claimant. Moreover, MLG conceded in the Clarification that 1,635 claimants did not have and could never have had a Regulation E claim against Wells Fargo. Accordingly, Wells Fargo requested that the Process Arbitrator enforce the October 27 PA Order by (1) moving ahead with individual merit arbitrations for claimants MLG had confirmed and (2) dismissing all the other claims without prejudice to re-submitting demands under specific conditions.

34. On October 13, 2023, MLG submitted its response to the September 22 Wells Fargo Memo (the "MLG October 13 Response"). A true and correct copy of the MLG October 13 Response is attached hereto as **Exhibit 44**. Wells Fargo filed its reply on October 20, 2023 (the

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

"October 20 Wells Fargo Reply"). A true and correct copy of the October 20 Wells Fargo Reply is attached hereto as **Exhibit 45**.

35.    On November 10, 2023, the Process Arbitrator entered an order on MLG's Motion to Amend, the Clarification, and Wells Fargo's request to move forward with the mass arbitration contained in the September 22 Wells Fargo Memo (the "November 10 PA Order"). A true and correct copy of the November 10 PA Order is attached hereto as **Exhibit 46**. The November 10 PA Order denied MLG's request to amend the October 27 and June 14 PA Orders. The November 10 PA Order then held that the 3,493 claimants who were not listed in the "Order Compliant Cases" tab on the August 14 and September 13 Spreadsheets had "failed to comply with the pleading requirements in the" October 27 PA Order "for over a year." Accordingly, the Process Arbitrator dismissed without prejudice all claimants who alleged they had a qualifying Regulation E transaction but had not complied with the October 27 PA Order. The November 10 PA Order stated that the claimants may re-file claims concerning qualifying Regulation E transactions in the mass arbitration on the condition that they "l) they comply with the three pleading requirements in the [October 27 PA Order], and 2) Claimants' Attorney complies with the requirement of California Code of Civil Procedure Section 128.7." The November 10 Order also granted MLG's request to file a motion to file amended claims. It ordered MLG to submit "a new Motion to File Amended Claims or a statement that they wish their July [24], 2023, pleading to be the Motion" by December 1, 2023.

36.    On December 1, 2023, MLG submitted its renewed Motion to Amend (the "Renewed Motion to Amend"). A true and correct copy of the Renewed Motion to Amend is attached hereto as **Exhibit 47**.[5] The Renewed Motion to Amend sought amendment on behalf of two separate categories of claimants. The first category were claimants listed on the "Order

---

[5] Like with its original Motion to Amend, MLG attached a proposed amended claim to its Renewed Motion to Amend (the "Renewed Proposed Amended Claim"). The Renewed Proposed Amended Claim attached to the Renewed Motion to Amend was virtually identical to MLG's original Proposed Amended Claim. MLG further stated that if the Renewed Proposed Amended Claim was approved, claimants would seek to "plead their claims more specifically."

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

Compliant Cases" tab of the August 14 and September 13 Spreadsheets that were not dismissed by the November 10 PA Order. The second category were claimants on the "Amended Claim Cases" and "Cases Still Working On" tabs of the August 14 and September 13 Spreadsheets who failed to meet the requirements of the October 27 PA Order and whose demands had been dismissed without prejudice. MLG then further differentiated claimants into two additional categories. The first additional category were claimants who filed demands prior to September 27, 2022 and only alleged Regulation E-related violations. For these claimants, MLG sought to amend their demands to include allegations discussing APSN and Multiple Fee theories (but no specific claims). The second additional category of claimants were those who filed demands since September 27, 2022 and already alleged Regulation E claims and included allegations (but no specific claims) discussing APSN and Multiple Fee theories. For these claimants, MLG sought leave to amend to add the additional claims unrelated to Regulation E and the allegations regarding APSN and Multiple Fees outlined in the Renewed Proposed Amended Claim. MLG also requested an order from the Process Arbitrator requiring that Wells Fargo provide account information for claimants to MLG.

37.    On December 11, 2023, Wells Fargo responded to MLG's Renewed Motion to Amend (the "December 11 Wells Fargo Response"). A true and correct copy of the December 11 Wells Fargo Response is attached hereto as **Exhibit 48**. Therein, Wells Fargo argued that: (1) the request for amendment related to the dismissed claimants should be denied because those claimants did not have a live demand subject to amendment; (2) the request for amendment related to claimants who were "Order Compliant" should be denied because MLG's request for amendment was made in bad faith, was unreasonably delayed, and would unduly prejudice Wells Fargo; and (3) if the Process Arbitrator granted the Renewed Motion to Amend, she should deny MLG's request to use the Renewed Proposed Amended Claim and instead require any amended demands to include facts sufficient to support claimant's belief that claimant has been charged APSN and/or Multiple Fees by Wells Fargo (beyond mere information and belief that Wells Fargo has charged such fees to other customers) and facts sufficient to support the specific claims that claimant intends to assert at claimant's individual merit arbitration. Wells Fargo also argued that MLG's continued attempt to blame Wells Fargo for its lack of diligence by demanding an order requiring Wells Fargo

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

to turn over years of claimant data should be ignored because: (1) MLG's assertion that it needs information from Wells Fargo in order to provide basic information supporting the claims it **already** submitted established that its intent is to improperly manufacture claims that may or may not exist; (2) MLG's reliance on CFPB guidance was unfounded; and (3) MLG's assertions that claimants could not get bank statements was absurd and lacked any evidentiary support.

38.     On December 18, 2023, MLG submitted its reply in support of its Renewed Motion to Amend (the "December 18 MLG Reply"). A true and correct copy of the December 18 MLG Reply is attached hereto as **Exhibit 49**.

39.     On January 10, 2024, the Process Arbitrator entered an order dismissing without prejudice claimants who had failed to meet the October 27 PA Order's requirements (the "January 10 PA Order"). A true and correct copy of the January 10 PA Order is attached hereto as **Exhibit 50**. The January 10 PA Order dismissed without prejudice claimants who had failed to meet the October 27 PA Order's requirements. The January 10 PA Order granted MLG's motion to amend for the claimants who had met the October 27 PA Order's requirements. The January 10 PA Order then ordered that "[b]efore any new cases or refiled cases alleging one or more violations of any" claim MLG sought to include in the amended demands, "each [demand] must specifically plead l) each claimant's Wells Fargo account number or numbers for the account or accounts at issue, 2) the statute or statutes that Respondents violated, and 3) facts sufficient to establish the violation of each of those statutes concerning that Claimant." The January 10 PA Order also stayed invoicing of AAA fees for all new and refiled demands until they comply with the order's pleading requirements, and also required an attorney of record for claimants to sign each new case or amended demand as required by California Code of Civil Procedure Section 128.7 or, in lieu of filing and serving a separate amended claim for each claimant, file one spreadsheet signed by an attorney of record for claimants including all the ordered information for each claimant.

40.     Also on January 10, 2024, the AAA began moving forward with administering individual merit arbitrations for the 432 claimants who met the filing requirements in the October 27 PA Order. MLG demanded in-person hearings for 259 of those claimants, including Ms. Wagman-Geller. On January 10, 2024, AAA requested that Wells Fargo meet and confer with MLG

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

"to identify a specific method of appointing arbitrator(s)" to the first 187 individual cases moving forward (the "January 10 AAA Letter"). A true and correct copy of the January 10 AAA Letter is attached hereto as **Exhibit 51**. If the parties could not agree, AAA stated that it would proceed with the appointment pursuant to Supplementary Rule MA-7(a). In conferring on how to move forward with the first 187 cases, MLG yet again reiterated its position that claimants' merit arbitrations must be individualized. A true and correct copy of a January 22, 2024 email from MLG to Wells Fargo is attached hereto as **Exhibit 52**.

41.    On February 8, 2024, MLG filed a Complaint in the United States District Court for the Northern District of California challenging the January 10 PA Order. *See Penuela, et al. v. Wells Fargo & Co., et al.*, No. 3:24-cv-00766-KAW (N.D. Cal. filed Feb. 8, 2024) [hereinafter *Penuela*], at Dkt. No. 1 ("*Penuela* Complaint"). On April 26, 2024, MLG filed a First Amended Complaint in *Penuela*. *Penuela* at Dkt. No. 14. On May 28, 2024, Wells Fargo moved to dismiss or transfer the case to the Southern District of California where *Mosley I* is venued or compel the *Penuela* Plaintiffs to arbitration (the "*Penuela* Motion"). *See id.* at Dkt. No. 20, 21. The *Penuela* Motion was fully briefed, and on November 6, 2024, the Court ordered the case transferred to the Southern District of California. *See id.* at Dkt. No. 32.

42.    On March 7, 2024, the Ninth Circuit affirmed the District Court's decision in *Mosley I. Mosley v. Wells Fargo & Co.*, No. 23-55478, 2024 WL 977674, *1 (9th Cir. Mar. 7, 2024). Prior to the Ninth Circuit affirming the District Court's order compelling the *Mosley* Plaintiffs to arbitration, Wells Fargo submitted Rule 28(j) letters to the appellate court notifying it of the ongoing proceedings in the mass arbitration, including the Process Arbitrator's entry of the November 10 PA Order and January 10 PA Order. True and correct copies of the Rule 28(j) letters provided by Wells Fargo to the Ninth Circuit are attached hereto as **Exhibits 53 and 54**.

43.    On March 13, 2024, AAA sent an email to Wells Fargo's counsel (the "March 13 AAA Email") attaching: (i) a letter informing the parties that it had invoiced Wells Fargo $465,000 for arbitrator compensation related to 186 individual cases (the "March 13 AAA Letter"); (ii) the invoice to Wells Fargo for $465,000 (the "March 13 AAA Invoice"); and (iii) a spreadsheet of the 186 claimants and the related case number (the "March 13 AAA Spreadsheet"). True and correct

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

copies of the March 13 AAA Email, March 13 AAA Letter, March 13 AAA Invoice, and March 13 AAA Spreadsheet are attached hereto as **Exhibits 55-58**. The March 13 AAA Invoice was issued to Wells Fargo's counsel, not to Wells Fargo directly.

44. On March 20, 2024, Wells Fargo emailed AAA requesting clarification on why it would be billed for arbitrator compensation when under the relevant fee schedule, arbitrator compensation was not due until a preliminary management hearing is held by the arbitrator (the "March 20 Wells Fargo Email"). A true and correct copy of the March 20 Wells Fargo Email is attached hereto as **Exhibit 59**. A true and correct copy of the applicable fee schedule is attached hereto as **Exhibit 60**. After not receiving a response from AAA on its request for clarification, Wells Fargo then called its AAA administrator who said she would look into it.

45. Out of an abundance of caution since it did not hear back from AAA regarding its inquiry, Wells Fargo paid the March 13 Invoice on April 12, 2024 via electronic funds transfer.

46. On April 17, 2024, AAA informed the parties that it had received payment of the March 13 Invoice (the "April 17 AAA Email") and attached a spreadsheet of 18 California Claimants (the "April 17 AAA Spreadsheet"). True and correct copies of the April 17 AAA Email and April 17 AAA Spreadsheet are attached hereto as **Exhibits 61 and 62**. AAA informed the parties that although it received Wells Fargo's payment, it did not receive it "by the due date noted in the [March 13 AAA Letter]" and, "[p]ursuant to CA CCP 1281.98," requested MLG to "review the relevant section of the statute and provide a response on how they wish to proceed on the list of cases" in the April 17 Spreadsheet. There were 18 claimants listed on the April 17 Spreadsheet. *See* Exhibit 62. AAA later clarified that there were 46, rather than the initially noted 18, claimants impacted by this issue (the "May 9 AAA Letter"). A true and correct copy of the May 9 AAA Letter is attached hereto as **Exhibit 63**. The May 9 AAA Letter then stated that, absent party agreement by May 13, 2024, AAA would administratively close the 46 individual claimants' cases pursuant to Section 1291.98.

47. Between April 18, 2024 and June 14, 2024, MLG, Wells Fargo, and AAA exchanged correspondence related to the 46 claimants listed in the May 9 AAA Letter. Wells Fargo took the position that AAA was misinformed that Section 1281.98 was triggered and that the issue was

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

squarely within the Process Arbitrator's purview under the Supplemental rules to decide. MLG took the position that the 46 individual claimants' cases should be dismissed and disagreed with Wells Fargo's position that the Process Arbitrator should review the issue. Despite continued arguments from both Wells Fargo and MLG, the AAA ultimately closed the 46 individual claimants' cases. MLG filed a lawsuit against Wells Fargo on behalf of the 46 individual claimants whose cases had been closed by AAA. *See Mosley, et al. v. Wells Fargo & Co., et al.*, No. 3:24-cv-03171-JST (N.D. Cal. filed May 28, 2024) [hereinafter *Mosley II*]. Wells Fargo filed a motion to compel the 46 individual claimants' back to arbitration. *Mosley II* at Dkt. No. 23. On November 14, 2024, the Court granted Wells Fargo's motion to compel arbitration. *Id.* at Dkt. No. 45.

48.    Starting on April 17, 2024, AAA began appointing arbitrators, on a rolling basis, for individual merit arbitrations for all claimants who met the requirements of the October 27 PA Order and were not dismissed without prejudice from the mass arbitration, excluding the 46 claimants whose cases had been closed by AAA. By September 25, 2024, a total of 72 arbitrators were appointed to 204 individual claimants' cases. During this process of appointing merit arbitrators, both Wells Fargo and MLG were provided the opportunity to object to arbitrator appointments. Wells Fargo objected to the appointment of 12 merit arbitrators based on their lack of experience in the laws at issue while MLG objected to the appointment of 38 merit arbitrators based on lack of experience as well as a purported lack of impartiality. For the purported lack of impartiality, MLG provided one of the following reasons: (a) the arbitrator had been involved in past arbitrations involving Wells Fargo and/or Wells Fargo's counsel; (b) the arbitrator had a Wells Fargo account; and/or (c) supplemental information explaining involvement with Wells Fargo was not provided. Wells Fargo responded to MLG's impartiality arguments stating that the reasons provided by MLG were not legitimate attacks on impartiality. Ultimately, AAA discharged 11 arbitrators based on MLG's objections and 5 arbitrators based on Wells Fargo's objections. An additional 11 arbitrators were removed because both MLG and Wells Fargo objected to their appointments. Between April 25, 2024 and September 18, 2024, AAA affirmed the appointment of merit arbitrators in 187 individual arbitrations. Ms. Wagman-Geller was not one of the first 187 claimants assigned to merit arbitrators.

49.     On May 9, 2024, AAA began scheduling preliminary management conferences ("PMCs") for the individual arbitrations that had merit arbitrators assigned. Prior to the PMCs, AAA requested that the parties exchange proposed scheduling orders. Therein, the parties set forth their differing positions on: (i) whether Wells Fargo should be required to produce the individual claimant's account data prior to the individual claimant amending his or her demand; (ii) the scope of information Wells Fargo should be required to provide the individual claimant; and (iii) whether the individual claimant should be required to appear at a deposition and the final hearing in person. A true and correct copy of an exemplar proposed Joint Scheduling Order is attached hereto as **Exhibit 64**.

50.     At the PMCs, the parties provided background to the merit arbitrators on the procedural posture of the claimant's cases and the orders entered by the Process Arbitrator. The parties also argued their positions on the disputed issues related to amendment, discovery, and in-person depositions and hearings. Some arbitrators ordered the parties to brief the issue of whether Wells Fargo was required to produce discovery prior to an individual claimant amending a demand. Some merit arbitrators required briefing on certain issues prior to entering a scheduling order. For example, at the first PMC to take place, Arbitrator Jennifer Cook ordered briefing on the amendment issue for the individual merit arbitrations under her purview. A true and correct copy of Arbitrator Cook's order is attached hereto as **Exhibit 65**. That briefing was limited to 5 pages double spaced, and the parties submitted it to Arbitrator Cook on June 13, 2024. Exemplar briefs submitted by Wells Fargo and an individual claimant in response to Arbitrator Cook's order on the amendment issue are attached hereto as **Exhibits 66-67**.

51.     The merit arbitrators then entered scheduling orders based on the arguments set forth at the PMCs and any briefing that was ordered. True and correct copies of exemplar scheduling orders entered in individual arbitrations by Arbitrator Cook, Arbitrator Lowry, Arbitrator Pelaez-Prada, and Arbitrator Kirby Smith are attached hereto as **Exhibits 68-71**.

52.     While some merit arbitrators required briefing on the amendment issue, some merit arbitrators did not. For example, Arbitrator Lowry ordered an individual claimant to file an affidavit stating whether the claimant had online access to bank statements and set forth a protocol for a

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

limited document exchange between the parties. Arbitrator Lowry ordered the claimant to identify all transactions he wished to question, and Wells Fargo was ordered to provide information on those specific transactions. *See* Ex. 69. MLG never submitted an affidavit for the claimant. In the same order, Arbitrator Lowry ordered the claimant's deposition and the evidentiary hearing to take place in-person.

53. From May 30, 2024 to July 12, 2024, MLG and Wells Fargo attended PMCs on behalf of thirty-seven individual claimants. Each merit arbitrator determined whether to order briefing on any preliminary issues and entered scheduling orders on an individual basis.

54. PMCs were scheduled for seven individual claimants in Florida. MLG informed AAA that it was unable to proceed with four claimants' cases before Arbitrator Barry L. Miller "due to constraints imposed by the Florida Bar and the annual limit on the number of cases an out-of-state attorney may handle" and that MLG needed additional time "to prepare and assign attorneys who can comply with [Florida's] regulations." Arbitrator Miller postponed the PMCs for the four claimants so they could obtain Florida counsel. Despite the continuation, MLG and the claimants failed to appear at the rescheduled PMCs. Arbitrator Miller then issued an order to show cause as to why claimants' cases should not be dismissed for claimants' failure to retain counsel eligible to participate in their arbitrations. A true and correct copy of an exemplar Order to Show Cause entered by Arbitrator Miller is attached hereto as **Exhibits 72**. Neither MLG nor claimants responded to the order to show cause, and their arbitrations were dismissed. A true and correct copy of an exemplar closure letter from AAA dismissing a claimant's arbitrations for whom Arbitrator Miller presided is attached hereto as **Exhibits 73**.

55. On July 12, 2024, MLG, on behalf all claimants, sent AAA and Wells Fargo a notice of intent to suspend participation in further AAA proceedings unless substantial changes are made to the arbitration proceedings (the "July 12 Notice"). A true and correct copy of July 12 Notice of Intent to Suspend is attached hereto as **Exhibit 74**.

56. On July 16, 2024, Wells Fargo responded to the July 12 Notice. A true and correct copy of Wells Fargo's July 16, 2024 Response is attached hereto as **Exhibit 75**.

57. On July 22, 2024, AAA provided the parties with options for moving forward, but

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

noted that the parties had to mutually agree on an option for AAA to proceed with it. Otherwise, AAA would continue to administer the cases as it had been, as "AAA has no authority to alter arbitrators' orders or to require certain discovery processes." AAA further pointed the parties to AAA Consumer Rule 39, which provides that the "arbitration may proceed even if any party or representative is absent, so long as proper notice was given and that party or representative fails to appear or obtain a postponement from the arbitrator." A true and correct copy of AAA's July 22, 2024 correspondence is attached hereto as **Exhibit 76**.

58.    On August 2, 2024, counsel for Wells Fargo notified AAA that the parties conferred but were unable to come to an agreement and requested that AAA continue to administer the individual arbitrations. On August 8, 2024, AAA notified the parties that it would continue administration of the individual arbitrations pursuant to the applicable AAA rules and directed the parties to raise their request with the merit arbitrators. A true and correct copy of the August 8, 2024 email thread, which includes the August 2, 2024, correspondence is attached hereto as **Exhibit 77**.

59.    On August 23, 2024, MLG sent an email to AAA stating that it would "continue to stand by" the July 12 Notice, "hope[d]" that AAA had notified the assigned arbitrators of its position, and that it was "actively consulting with" its clients "regarding this situation" and would "provide an update once those conversations concluded." ("MLG's August 23 Email"). A true and correct copy of MLG's August 23 Email is attached hereto as **Exhibit 78**.

60.    Because MLG refused to participate in the individual arbitrations but had not dismissed the demands or withdrawn as counsel—and to ensure that claimants were aware of MLG's refusal—rather than move forward with the individual arbitration as permitted by Consumer Rule 39, Wells Fargo began reaching out to the merit arbitrators requesting an order for a status conference that required the presence of the claimant. A true and correct copy of an exemplar of Wells Fargo's communications with a merit arbitrator requesting claimants' presence at a status conference is attached hereto as **Exhibit 79**.

61.    In response, some merit arbitrators granted Wells Fargo's request, while others did not. Other arbitrators entered orders on their own accord. True and correct exemplar orders from

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

Arbitrator Cook, Arbitrator Lowry, and Arbitrator William Carroll are attached hereto as **Exhibits 80-82**.

62.     On September 3, 2024, AAA issued four invoices for: (a) initial arbitrator compensation deposits for 182 non-California cases, each in the amount of $2,500; (b) case management fees for 182 non-California cases, each in the amount of $1,400; (c) initial arbitrator compensation deposits for 59 California cases, each in the amount of $2,500; and (d) case management fees for 59 California cases, each in the amount of $1,400. The total amount invoiced to Wells Fargo on September 3, 2024 was $939,900.

63.     On September 10, 2024, Wells Fargo timely paid $230,100 and on September 11, 2024, Wells Fargo timely paid $709,800 totaling $939,900 for the September 3, 2024 Invoices.

64.     Prior to any status conferences taking place, on the evening of September 25, 2024, MLG began submitting notices of voluntary dismissals on behalf of claimants that had been assigned a merit arbitrator. A true and correct copy of an exemplar notice of voluntary dismissal for an individual claimant who had been assigned a merit arbitrator is attached hereto as **Exhibit 83**. On September 26, 2024, MLG submitted a notice of voluntary dismissal for all claimants who had not yet been assigned merit arbitrators, including Ms. Wagman-Geller. A true and correct copy of the notice of voluntary dismissal for claimants who had not yet been assigned a merit arbitrator is attached hereto as **Exhibit 84**.

65.     MLG submitted voluntary notices of dismissal for all claimants except one. For that claimant, rather than a notice of dismissal, MLG submitted a motion to withdraw from proceedings. MLG's motion established that it had first began informing its clients of its intentions within AAA on, at the latest, August 20, 2024. A true and correct copy of the motion to withdraw submitted by MLG is attached hereto as **Exhibit 85**.

66.     On October 3, 2024, AAA requested Wells Fargo provide their position with respect to the individual claimants' voluntary dismissal by October 10, 2024. A true and correct copy of AAA's October 3, 2024 request is attached hereto as **Exhibit 86**.

67.     On October 10, 2024, Wells Fargo responded to AAA's request by stating that it took no position on the individual claimants' voluntary dismissals and unilateral withdrawal from

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

their individual arbitrations while reserving all rights and claims in law and equity related thereto. A true and correct copy of Wells Fargo's October 10, 2024 response is attached hereto as **Exhibit 87**.

68.     On October 17, 2024, AAA informed Wells Fargo and MLG that it would proceed with closing, as withdrawn, 254 individual arbitrators without an arbitrator yet appointed and refund $630,000 in arbitrator compensation deposits to Wells Fargo. A true and correct copy of AAA's October 17 Letter is attached hereto as **Exhibit 88**. AAA also informed the Parties that it would notify the appointed arbitrators that their role ended and that the matters administratively closed by October 25, 2024 absent notification from either party. On October 29, 2024, after receiving no notifications from MLG or Wells Fargo, AAA closed the 123 individual arbitrations with merit arbitrators assigned and provided a statement listing the amount of unused arbitrator compensation to be refunded to Wells Fargo. AAA also informed Wells Fargo that it would refund Wells Fargo a further $215,300 in unused arbitrator compensation. A true and correct copy of AAA's October 29 Letter is attached hereto as **Exhibit 89**.

69.     While Wells Fargo has been refunded amounts paid for the unused arbitrator compensation, it was not refunded for any of the case management fees it paid on the September 3, 2024 Invoices. These un-refunded case management fees totaled to over $337,000 dollars. Wells Fargo paid these fees even though AAA was aware of its intent to voluntary dismiss all of the claimants by August 20, 2024. *See* Ex. 85.

70.     The original plaintiff in this matter, Mr. Joseph Bacigalupi, filed a demand with AAA on January 10, 2023, as a part of MLGs mass arbitration. A true and correct copy of Mr. Bacigalupi's demand is attached as **Exhibit 90.** On November 27, 2024, it came to Wells Fargo's attention that Mr. Bacigalupi, the original named plaintiff in this matter, passed away on October 12, 2024. That same day, counsel for Wells Fargo emailed MLG suggesting that all dates should be taken off the calendar pending direction from MLG on how they planned to proceed. On December 2, 2024, the parties stipulated to take all deadlines off calendar and allow Plaintiff 60 days to determine the next steps. Dkt. 17. The Court granted the stipulation on December 3, 2024. Dkt. 18. On January 31, 2025, Plaintiff filed the First Amended Class Action Complaint, with Ms.

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER

1    Wagman-Geller serving as the named plaintiff. Dkt. 19.

2

3          I declare under penalty of perjury under the laws of the State of California that the foregoing

4    is true and correct.

5          Executed this 14th day of February 2025, in San Francisco, California.

6                                              By: */s/ Alicia A. Baiardo*_____

7                                                   Alicia A. Baiardo

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED
COMPLAINT AND MOTION TO TRANSFER

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2025 I electronically filed the foregoing document entitled **DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS WELLS FARGO BANK, N.A. AND WELLS FARGO & CO'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

*/s/ Alicia A. Baiardo*
Alicia A. Baiardo

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO TRANSFER