Richard D. McCune (State Bar No. 132124)
rdm@mccunewright.com
Steven A. Haskins (State Bar No. 238865)
sah@mccunewright.com
Valerie L. Savran (State Bar No. 334190)
vls@mccunewright.com
**MCCUNE LAW GROUP, APC**
3281 E. Guasti Road, Suite 100
Ontario, California 91761
Telephone:    (909) 557-1250
Facsimile:    (909) 557 1275

Emily J. Kirk (IL Bar No. 6275282)*
ejk@mccunewright.com
**MCCUNE LAW GROUP, APC**
231 N. Main Street, Suite 20
Edwardsville, IL 62025
Telephone: (618) 307-6116
Facsimile: (618) 307-6161

*_Pro Hac Vice_ application to be submitted

Attorneys for Plaintiff and the Putative Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE WAGMAN-GELLER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., WELLS FARGO & CO, AMERICAN ARBITRATION ASSOCIATION, INC. and DOES 1 through 5, inclusive,,<br><br>Defendants. | Case No. 3:24-cv-06778-SK<br><br>**OPPOSITION TO DEFENDANT AMERICAN ARBITRATION ASSOCIATION'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing Date:    April 14, 2025**<br>**Time:    9:30 a.m.**<br>**Courtroom:    C**<br><br>Action Filed: September 26, 2024<br>Trial Date:    None Set |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................2

      A.      AAA Offers Its Arbitration Services To Large Corporations While Promising Consumers A Fair And Balanced Hearing On The Merits Of Their Claims..................................................................................................2

      B.      Wells Fargo's Arbitration Agreement Requires That Consumers Waive Their Rights To File Lawsuits In Favor Of Arbitration Administrated By AAA ..........................................................................................................2

      C.      The Relationship Between Wells Fargo and AAA Is Based On AAA Protecting Wells Fargo's Interests .................................................................4

      D.      The Arbitration Process Demonstrates That Consumers Do Not Receive An Efficient Arbitration Resolution..............................................................5

III.    ARGUMENT .......................................................................................................6

      A.      Arbitral Immunity Does Not Protect AAA's Failure To Provide A Timely Decision Of Plaintiff's Claim ........................................................................6

      B.      Arbitral Immunity Does Not Apply To Protect Arbitrators Or Sponsors From Damages Caused By Fraud ..................................................................7

      C.      Plaintiff Has Sufficiently Pled Allegations Supporting Each Element Of Fraudulent Inducement ....................................................................................9

      D.      Plaintiff Pleads An Actionable Claim.........................................................11

IV.     CONCLUSION...................................................................................................13

CERTIFICATE OF SERVICE ......................................................................................14

**OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**
Case No. 3:24-cv-06778-SK

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Am. Arbitration Assn. v. Superior Court,*
  8 Cal.App.4th 1131 (1992)..................................................................................7

*Baar v. Tigerman,*
  , 140 Cal.App.3d 979, 983-85 (1983)..............................................................8, 9

*Cappello v. Walmart Inc.,*
  394 F.Supp.3d 1015 (N.D.Cal. 2019)...............................................................12

*Chacanaca v. Quaker Oats Co.,*
  752 F.Supp.2d 1111 (N.D.Cal. 2010)...............................................................10

*Chapman v. Skype Inc.,*
  220 Cal.App.4th 217 (2013)..............................................................................11

*Day v. GEICO Casualty Co.,*
  580 F.Supp.3d 830 (N.D.Cal. 2022)..................................................................12

*Engalla v. Permanente Med. Grp., Inc.,*
  15 Cal.4th 951 (1997).......................................................................................10

*Hadley v. Kellogg Sales Co.,*
  273 F.Supp.3d 1052 (N.D.Cal. 2017)................................................................10

*In re Marriage of Assemi,*
  (1994) 7 Cal.4th 896...........................................................................................7

*In re Tobacco II Cases,*
  46 Cal.4th 298 (2009).......................................................................................10

*Klein v. Chevron U.S.A., Inc.,*
  202 Cal.App.4th 1342 (2012)............................................................................12

*La Serena Properties v. Weisbach,*
  186 Cal.App.4th 893 (2010)................................................................................7

*Linear Tech. Corp. v. Applied Materials, Inc.,*
  152 Cal.App.4th 115 (2007)..............................................................................13

*Morgan Phillips Inc. v. JAMS/Endispute,*
  140 Cal.App.4th 795 (2006)............................................................................8, 9

*Nationwide Biweekly Administration, Inc. v. Superior Court of Alameda County,*
  9 Cal.5th 279 (2020).........................................................................................11

*NJOY, LLC v. Imiracle (HK) Ltd.,*
  --- F.Supp.3d ---, 2024 WL 5324737 (S.D.Cal. Dec. 20, 2024)..................11, 12

**OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**
Case No. 3:24-cv-06778-SK

*Pemberton v. Nationstar Mortgage LLC,*
   331 F.Supp.3d 1018 (S.D.Cal. 2018) ................................................................. 11, 12

*Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith,*
   477 F.3d 1155 (10th Cir. 2007) ................................................................................. 8

*Progressive West Ins. Co. v. Superior Court,*
   135 Cal.App.4th 263 (2005) .................................................................................... 12

*Sacks v. Dean Dietrich,*
   663 F.3d 1065 (9th Cir. 2011) ............................................................................... 7, 8

*Vazquez v. Superior Court,*
   4 Cal.3d 800 (1971) ................................................................................................. 10

*Wasyl, Inc. v. First Boston Corp.,*
   813 F.2d. .................................................................................................................... 7

## **Other Authorities**

Rest.2d Torts § 538 ........................................................................................................ 10

**OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**
Case No. 3:24-cv-06778-SK

## I.    __INTRODUCTION__

Defendant American Arbitration Association ("AAA") suggests that arbitral immunity provides a flexible enough shield to protect any conduct, no matter how unfair or egregious. But the scope of arbitral immunity is narrower—it provides arbitrators (and their sponsoring organizations) with the freedom from lawsuits for quasi-judicial acts. Put another way, it protects only those acts comparable to decision-making acts by judges. It does not give AAA total license to act outside the law.

AAA's immunity claims fall short for two reasons. First, arbitral immunity does not protect arbitrators (or arbitration sponsors like AAA) from engaging in fraud, misrepresentations, and other unfair business practices intended to induce consumers into using their arbitration services. Second, arbitral immunity does not extend to administrative acts preventing arbitrators from making judicial decisions. The collusive nature of the pre-existing relationship between Wells Fargo and AAA prevented arbitrators from making judicial decisions, and the acts deriving from that inherent, collusive bias (and its downstream consequences on Plaintiff and other complainants) are not protected by arbitral immunity.

AAA also argues that Plaintiff's misrepresentation claims should be dismissed because Plaintiff fails to demonstrate any actionable statements were made, or that Plaintiff relied on any such statements. But AAA's arguments only draw attention away from its most fundamental misrepresentation—the promise that Plaintiff would receive a fair, thorough, and merit-based arbitration in the first place. The complaint alleges that large corporations like Wells Fargo scheme with large arbitration providers, including AAA, to prevent class action litigation. Part of that scheme is to present arbitration as a streamlined and efficient alternative to courts in order to convince consumers to waive their litigation rights. The reality, however, is that the arbitration process is one-sided, designed to prevent consumers from obtaining any kind of hearing—much less a fair one.

The premise of arbitral immunity is to preserve an arbitrator's ability to serve as an independent judicial decisionmaker, standing in the shoes of the judge who would otherwise hear the complaint. The Court should deny the motion and permit this lawsuit to proceed.

**OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**
Case No. 3:24-cv-06778-SK

## II.    FACTUAL BACKGROUND

### A.    AAA Offers Its Arbitration Services To Large Corporations While Promising Consumers A Fair And Balanced Hearing On The Merits Of Their Claims

AAA is headquartered in New York, and states it is the "largest global provider of alternative dispute resolution (ADR) services in the world." *See* First Amended Complaint ("FAC"), Dkt. No. 24, ¶ 47.  AAA represents that it provides "fair, rational, faster, and less adversarial means to handle" dispute resolution.  *Id.*, ¶ 48. It claims its primary mission as an ADR provider is to move "cases through mediation and arbitration fairly and cost effectively..." *Id.*

AAA makes various promises about its services.  For example, it represents that "arbitration is usually faster and cheaper than going to court." *Id.*, ¶ 50. It also represents that "[p]roviders of goods and services should develop ADR programs which entail reasonable cost to Consumers based on the circumstances of the dispute, including, among other things, the size and nature of the claim…." *Id.*  AAA further states that "[n]o party should ever be denied the right to a fundamentally-fair process due to an inability to obtain information material to a dispute." *Id.* To that end, AAA calls itself a "neutral, nonpartisan, not-for-profit public service organization," assuring parties that it provides an unbiased forum for the consideration of arbitrated claims, including consumer claims. *Id.*, ¶ 51.

### B.    Wells Fargo's Arbitration Agreement Requires That Consumers Waive Their Rights To File Lawsuits In Favor Of Arbitration Administrated By AAA

Plaintiff is a Wells Fargo customer. *Id.*, ¶ 58.  Accordingly, she, like thousands of others, entered into an Account Agreement with Wells Fargo.  *Id.*, ¶ 161. The Account Agreement included an arbitration provision which purportedly required customers to resolve disputes through arbitration. *Id.*, ¶ 8. In addition, it stated that all arbitrations must be conducted by AAA. *Id.*, ¶ 52.

OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)
Case No. 3:24-cv-06778-SK

1    Wells Fargo's arbitration provision sounded consumer-friendly in that it presented

2 arbitration as a preferred method of resolving disputes compared to litigating in court.  For

3 instance, the Account Agreement explained to customers that in arbitration "an impartial third

4 party [AAA] will hear the dispute" and "provide a decision." *Id.*, ¶ 9. It then referred customers

5 to AAA's Consumer Arbitration Rules stating that those rules would govern the arbitration

6 process. *Id.,* ¶¶ 9, 16.  The arbitration provision further touted that "[a]rbitration is beneficial

7 because it provides a legally binding decision in a more streamlined, cost-effective manner than

8 a typical court case."  *Id.,* ¶ 9. It also stated that disputes should be resolved "quickly and as

9 easily as possible." *Id.*, ¶ 15. Beyond requiring a customer to waive the right to pursue disputes

10 in court, the arbitration provision also included a provision requiring customers to waive their

11 rights to any kind of class action relief.  *Id.*, ¶ 8.  Instead, all arbitrations had to be conducted

12 individually.

13    AAA made similar promises to those of Wells Fargo.  For example, AAA stated that it

14 "lessens the load of a tremendously overburdened court system" and "supports access to justice

15 for all."  *Id.*, ¶ 48.  It affirmatively represented that it provides "fair, rational, faster, and less

16 adversarial means to handle the disputes that inevitably arise." *Id.*  It also explained that AAA's

17 primary mission as a provider of alternative dispute resolution services is to move "cases through

18 mediation and arbitration fairly and cost effectively..." *Id.*

19    AAA's Consumer Rules for Arbitration made similar claims.  They stated that

20 "arbitration is usually faster and cheaper than going to court."  *Id.*, ¶ 50.  They also promised

21 that "[p]roviders of goods and services should develop ADR programs which entail reasonable

22 cost to Consumers based on the circumstances of the dispute, including, among other things, the

23 size and nature of the claim…" *Id.*  In addition, the rules stated that "[n]o party should ever be

24 denied the right to a fundamentally-fair process due to an inability to obtain information material

25 to a dispute."  *Id.* Finally, AAA informed consumers that it is a "neutral, independent, and

26 private not-for-profit organization," assuring them that their claims will be resolved in an

27 unbiased forum.  *Id.*, ¶ 51.

28

**OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**
Case No. 3:24-cv-06778-SK

### C.    The Relationship Between Wells Fargo and AAA Is Based On AAA Protecting Wells Fargo's Interests

Plaintiff alleges that Wells Fargo and AAA have a collusive relationship designed to prevent consumers from actually arbitrating disputes. *Id.*, ¶¶ 52-57.

The connection between AAA and Wells Fargo is symbiotic and maintained both through their direct contractual relationship, and through the indirect means by which they collectively influence arbitration proceedings. For example, AAA's governing council and "Council of 80" are dominated by law firms representing banks, including Wells Fargo, and other large corporations. *Id.*, ¶¶ 53-54. These councils give law firms (and their clients) influence over both the creation and implementation of AAA's rules, often to the benefit of large corporations like Wells Fargo at the expense of consumers. *Id.*, ¶ 54. Moreover, these firms then draft arbitration clauses for their clients designating AAA as the entity that will oversee all disputes, financially benefiting AAA. *Id.*, ¶ 53. In turn, AAA is indebted to these law firms and their clients, and it is in AAA's best interest to rule in their favor when disputes arise. This creates the exact opposite of the "neutral" and "fundamentally-fair process" both Wells Fargo and AAA promised Plaintiff and other consumers. *Id.*, ¶¶ 50-55.

Several other events and actions demonstrate AAA's lack of neutrality and independence. For example, the FAC alleges that the law firms that govern AAA have connections with the national interest group, the Chamber of Commerce, which opposes consumer class actions as a procedural mechanism for resolving consumer claims against large companies, including banks. *Id.*, ¶ 56. It comes as no surprise then that these law firms began using arbitration clauses that eliminated class action options for resolving small disputes affecting many people. *Id.* As a result, consumers began filing individual cases in arbitration. *Id.* Because these small disputes often involve thousands of consumers, they have been dubbed "mass arbitrations." *Id.*

Corporations, including banks, were not happy that consumers started filing thousands of claims in arbitration, so they turned to their law firms to help. One particular firm, Mayer Brown, which represents Wells Fargo, set out to revamp AAA's Rules to address these so-called "mass arbitrations." *Id.* Mayer Brown suggested that in these circumstances AAA should

OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)
Case No. 3:24-cv-06778-SK

require claimants to provide case proof before being allowed to move forward with a claim. *Id.* It also suggest the use of a AAA-appointed "process arbitrator" to resolve certain preliminary matters *en masse* before cases could proceed to an individual arbitrator. *Id.* While Mayer Brown was in the process of designing this new system, AAA began appointing process arbitrators as Mayer Brown suggested, even though its rules did not provide for this practice. *Id.* Using these tactics, AAA appointed a process arbitrator who ordered Plaintiff and similar individual claimants to provide additional information (which was maintained by Wells Fargo, not claimants) in order to move forward in arbitration. *Id.* The result – hundreds of claimants were dismissed because they did not have the information necessary to substantiate their claims, and AAA refused to require Wells Fargo to provide them it so they could meet the Process Arbitrator's requirements. *Id.* AAA permitted this even though it states that no party should ever be denied the right to pursue a claim due to inability to obtain information material to a dispute. *Id.*, ¶ 50. For those, like Plaintiff, who were able to access the information needed for at least some of the claims, the process still took more than a year to unfold, making the process anything but streamlined, cost-effective, and efficient as promised.

### D.    The Arbitration Process Demonstrates That Consumers Do Not Receive An Efficient Arbitration Resolution

As alleged in the FAC, Wells Fargo and AAA colluded on a series of actions designed to delay the arbitration process and make it as expensive as possible, ultimately preventing Plaintiff and other claimants from pursuing their claims in arbitration.

Once arbitrations began, Wells Fargo and AAA continued their actions to prevent consumers from obtaining their own personal information related to their checking accounts, including monthly account statements and transactional account data, which were needed to prove their claims and calculate damages. *Id.*, ¶ 22. This happened despite Section 1034(c) of the Consumer Financial Protection Act which requires financial institutions to provide this information to their customers when requested. *Id.* Rather than simply require Wells Fargo to provide each claimant with their own account information, Wells Fargo, with AAA's cooperation, instead forced each individual claimant to submit briefing on the issue which ended

-5-

up being thousands of pages long.  *Id.*, ¶¶ 23, 133. This was simply intended to make the process onerous, time-consuming, and anything but efficient.

In addition, Wells Fargo would use preliminary hearings to introduce onerous scheduling orders.  *Id.*, ¶¶ 21, 24-25, 133. When claimants objected, AAA arbitrators would require lengthy briefing.  *Id.* Often, more than one preliminary hearing was required to work out all of the issues. *Id.* Wells Fargo would also insist that claimants appear in person for all proceedings, including depositions, even though this is not common practice post-Covid.  *Id.* Moreover Wells Fargo would insist that the same discovery be duplicated in each case even though the practices at issue were uniform.  *Id.*, ¶ 119.  Wells Fargo even wanted to require its own corporate designee to be deposed in each case (*i.e.*, approximately 400 times), despite the information being the same. *Id.*, ¶¶ 133. AAA arbitrators would rarely rule against Wells Fargo on these requirements. Essentially, Wells Fargo and AAA created the process to be arduous, cumbersome, and expensive, that claimants effectively had no means to actually arbitrate claims that were only worth a few thousand dollars to begin with, which is why Plaintiff and other claimants had to voluntarily dismiss their cases. *Id.*  Again, this is despite AAA's promise that arbitration should entail "reasonable cost" to consumers based on the circumstance of the dispute, including the size and nature of the claim. *Id.*, ¶50.

## III.  **ARGUMENT**

### A.    **Arbitral Immunity Does Not Protect AAA's Failure To Provide A Timely Decision Of Plaintiff's Claim**

AAA argues that it is protected from Plaintiff's lawsuit because of arbitral immunity, which holds that arbitrators are immune for the exercise of quasi-judicial power.  But this argument suffers from two flaws. First, arbitral immunity applies only to allegations that involve the actual use of quasi-judicial power; it does not apply to claims addressing other parts of the arbitral relationship, including allegations of fraudulent inducement that occurred before any arbitral engagement took place.

OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)
Case No. 3:24-cv-06778-SK

1

### B. Arbitral Immunity Does Not Apply To Protect Arbitrators Or Sponsors

2

### From Damages Caused By Fraud

3     The policy behind arbitral immunity is that arbitrators often perform "the function of

4  resolving disputes between parties, or of authoritatively adjudicating private rights." *In re*

5  *Marriage of Assemi* (1994) 7 Cal.4th 896, 909. The immunity flows from the arbitrator's specific

6  roles that are "analogous to that of a judge." *Id.* Therefore, the purpose of arbitral immunity is to

7  insulate arbitrators from potential liability for "their activities in arriving at their award." *Id.*

8  And, in turn, California courts have extended arbitral immunity to organizations that sponsor

9  arbitrations, like AAA. *See Am. Arbitration Assn. v. Superior Court*, 8 Cal.App.4th 1131 (1992).

10     But merely because arbitration providers, like AAA, can bootstrap themselves into

11  arbitral immunity does not expand the scope of that immunity to shield everything the

12  organization does. Whether arbitral immunity applies to any particular case depends specifically

13  on whether the underlying claim turns on the arbitrator's commission of a "quasi-judicial" act.

14     This doctrine was discussed by the California Court of Appeal in *La Serena Properties v.*

15  *Weisbach*, 186 Cal.App.4th 893, 900 (2010). In *La Serena*, the plaintiff attempted to overturn an

16  arbitration decision because the arbitrator had failed to disclose a potential conflict of interest

17  prior to the hearing. *Id.* at 904. The failure to disclose not only raised a question of bias, but

18  violated the arbitration provider's rules. Despite the fact that the arbitrator's acts violated the

19  rules, the court concluded that appointing arbitrators is a necessary part of arbitration

20  administration, and is therefore protected by arbitral immunity because "the gravamen" of the

21  claims was the failure to disclose, which fell within the scope of quasi-judicial acts. *Id.* at 906.

22     From the *La Serena* decision, AAA appears to assume that its conception of arbitral

23  immunity is all encompassing. But the *La Serena* court explained that arbitral immunity expands

24  only as far as an act is quasi-judicial in nature, and that courts must "look at the nature of the

25  duty performed to determine if it is a judicial act." *La Serena,* 186 Cal.App.4th at 901. The Ninth

26  Circuit has drawn similar conclusions about the extent of arbitral immunity, which expands only

27  to those acts that are "within the scope of [arbitrators'] duties and within their jurisdiction."

28  *Sacks v. Dean Dietrich*, 663 F.3d 1065, 1069-70 (9th Cir. 2011) (quoting *Wasyl*, 813 F.2d at

-7-

1582). Either way, the pivotal issue in deciding whether to apply judicial immunity is whether "the claim at issue arises out of a decisional act." *Id.* (quoting *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155 (10th Cir. 2007)).

In sum, arbitral immunity does not extend to acts that fall outside of, or are inconsistent with, the arbitrator's process of making decisions regarding the outcome of a case. While arbitral immunity makes sense to protect arbitrators from liability based on their decisions, it makes less sense to immunize arbitrators from failing to satisfy their contractual duties to both parties. *See Morgan Phillips Inc. v. JAMS/Endispute*, 140 Cal.App.4th 795, 802 (2006) ("While we must protect an arbitrator acting in a quasi-judicial capacity, we must also uphold the contractual obligations of an arbitrator to the parties involved."). Among these contractual duties are to provide a service through which the parties' underlying private rights are adjudicated. But to the extent that the arbitrator fails to satisfy the parties' contractual expectations, arbitral immunity does not protect arbitrators (or their sponsors) from liability.

*Morgan Phillips* helps demonstrate where arbitrators cross over into non-immunized actions. In that case, the plaintiff sued an arbitrator for failing to issue a decision, while also suing JAMS for failing to disclose that its arbitrators "'secretly retain the right' to abandon the arbitration 'for no lawful reason' without rendering an award." 140 Cal.App.4th at 800. In doing so, the court echoed the *La Serena* court's explanation that "the purpose of arbitral immunity is to encourage fair and independent decision making by immunizing arbitrators from lawsuits arising from conduct in their decision making role." *Id*. at 801. But it determined that immunity was inappropriate in the *Morgan Phillips* case because arbitral immunity "cannot be used to immunize the unprincipled abandonment of the arbitration and refusal to make a decision" *Id*. at 802. As the court explained, "a judge has discretion in terms of when a decision is made, but an arbitrator loses jurisdiction if a timely award is not forthcoming." *Id.* at 801 (quoting *Baar v. Tigerman*, 140 Cal.App.3d 979, 983-85 (1983)).

In this case a timely award was anything but forthcoming, for all the reasons described above. Wells Fargo, with the cooperation of AAA, made this process as cumbersome, expensive, and inefficient as possible. Such time and expense for an individual consumer arbitration is a

**OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**
Case No. 3:24-cv-06778-SK

direct byproduct of Wells Fargo's scorched earth tactics, including requiring briefs amounting to thousands of pages in each arbitration to determine if claimants could obtain their own account information, in person depositions and hearings, duplicative discovery production, and motion practice in each case over the same uniform issues. This directly violates Wells Fargo's contract and AAA Rules, which promise an efficient, cost-effective, and streamlined process.  Yet, no matter how many times Claimants explained this, neither Wells Fargo or AAA would budge even though such practices violated their promises to consumers.

Accordingly, no case could ever actually get to the stage of having an award rendered on the merits because it was cost prohibitive to bring the cases, even before considering the years-long gap between filing of the claim and any potential hearing. *See* FAC, ¶ 4. The inability to obtain a hearing at all is not a matter arbitral immunity was intended to address. *Id.* at 801 (quoting *Baar v. Tigerman*, 140 Cal.App.3d 979, 983-85 (1983)).

### C. Plaintiff Has Sufficiently Pled Allegations Supporting Each Element Of Fraudulent Inducement

AAA also argues that Plaintiff has failed to allege fraudulent inducement because (1) it claims that Wells Fargo made any representations about the nature of arbitration, not AAA, and (2) Plaintiff has not demonstrated that she relied on any representations, false or otherwise. Both defenses are flawed in light of the pleadings. Because the allegations, if true, establish all the elements of fraudulent inducement, the motion should be denied.[1]

First, the Arbitration Agreement expressly references and incorporates AAA's own consumer arbitration rules. These rules are promulgated by AAA and make various representations about the nature of the arbitration process to which the contracting party is going to agree.  In short, these statements are attributable directly to AAA, and only AAA, and AAA is responsible for their content. *See* FAC, ¶¶ 129-132.

Nor can AAA's statements be chalked up to mere puffery. Puffery involves "outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude

---

[1] The same allegations supporting Plaintiff's fraudulent inducement claim also support her concurrently-pled UCL claim under the fraudulent prong of the statute.

OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)
Case No. 3:24-cv-06778-SK

reliance by consumers." *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1125-26 (N.D.Cal. 2010). Far from being "exaggerated" or "outrageous," the speed and efficiency of alternative dispute resolution are the reasons why consumers are willing to waive their rights to pursue litigation in the first place. AAA's claims that it is "fair," "rational," "neutral," "faster" and "less adversarial" than litigation, and "cost effective" are all statements that "could mislead a reasonable consumer"[2] in the context of seeking arbitration services. *Hadley v. Kellogg Sales Co.*, 273 F.Supp.3d 1052, 1083 (N.D.Cal. 2017) (discussing *Chacanaca*, 752 F.Supp.2d at 1125-26). Because these statements could all "arguably" mislead a reasonable consumer, none of them can be deemed as non-actionable puffery. *Chacanaca*, 752 F.Supp.2d at 1126 (holding that the terms "wholesome" and "smart choices made easy" could not be determined puffery at the motion to dismiss stage); *Hadley*, 273 F.Supp.3d at 1082- (determining that statements such as "healthy," "nutritious," and "lightly sweetened" could not be concluded as a matter of law to be puffery at the motion to dismiss stage).

With regard to Plaintiff's reliance, an element of fraudulent misrepresentation, "a presumption, or at least an inference, of reliance arises whenever there is a showing that a misrepresentation was material." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 976-77 (1997) (citing *Vazquez v. Superior Court*, 4 Cal.3d 800, 814 (1971)). A misrepresentation is material where "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id.* (citing Rest.2d Torts, § 538, subd. (2)(a)). And the materiality of a misrepresentation is generally a question of fact "unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009).

Here, AAA made specific statements regarding the efficiencies and effectiveness of arbitration proceedings over judicial proceedings. These statements include representations that: "arbitration is usually faster and cheaper than going to court;" "[p]roviders of goods and services

---

[2] *See* FAC, ¶¶ 48-50.

OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)
Case No. 3:24-cv-06778-SK

1  should develop ADR programs which entail reasonable cost to Consumers based on the

2  circumstances of the dispute, including, among other things, the size and nature of the claim;"

3  "no party should ever be denied the right to a fundamentally-fair process due to an inability to

4  obtain information material to a dispute." FAC, ¶ 131.

5  In the context of a consumer waiving his or her rights to begin judicial proceedings,

6  including actions for class relief, a reasonable consumer depends on these representations, as

7  these are surely not rights consumers would bargain away for nothing. Moreover, whether

8  Plaintiff read AAA's statements in its rules is not material to whether she can successfully

9  advance her fraud claim. Plaintiff had already been assured by Wells Fargo that she would

10  receive a swift and efficient arbitration proceeding, and therefore her reliance was justifiable

11  when she had already been swayed by a separate representation. *See Chapman v. Skype Inc*., 220

12  Cal.App.4th 217, 233-34 (2013) ("We conclude that Chapman's failure to read the entire

13  subscription agreement does not necessarily preclude her justifiable reliance on a representation

14  in the subscription agreement that the plan was "Unlimited" for purposes of negligent and

15  intentional misrepresentation.").

16  **D.    Plaintiff Pleads An Actionable Claim**

17  Plaintiff further alleges a claim based on the unfairness of AAA's practices. The UCL

18  does not define the term unfair, and California courts currently apply three different tests to

19  analyze UCL unfairness claims. *See Nationwide Biweekly Administration, Inc. v. Superior Court*

20  *of Alameda County*, 9 Cal.5th 279, 303-04 (2020). The first line of cases uses a "balancing test,"

21  in which courts "weigh the utility of the defendant's conduct against the gravity of the harm to

22  the alleged victim." *Id.* at 302 n.9. The business practice must be "immoral, unethical,

23  oppressive, unscrupulous or substantially injurious to customers." *Pemberton v. Nationstar*

24  *Mortgage LLC*, 331 F.Supp.3d 1018, 1051 (S.D.Cal. 2018). The second line of cases, though

25  particularly used in the context of competitor cases, uses the "tethering test, which requires that

26  the wrongfulness of the conduct be tethered to "specific constitutional, statutory, or regulatory

27  provisions"—or the "policy or spirit of such a law—even if there may be no precise violation of

28  those provisions." *NJOY, LLC v. Imiracle (HK) Ltd*., --- F.Supp.3d ---, 2024 WL 5324737, at *17

**OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**
Case No. 3:24-cv-06778-SK

(S.D.Cal. Dec. 20, 2024). And third, the "section 5 test" asks "whether there is substantial injury to consumers that is not outweighed by countervailing benefits to consumers and competition and is of a character that consumers themselves could not have reasonably avoided." *Id.*

Plaintiff's allegations satisfy all three tests. With regard to the balancing test, AAA can offer no utility to its conduct, when weighed against the gravity of the harm to Plaintiff and other claimants. Indeed, the gravamen of the complaint is that AAA was supposed to provide a service for Plaintiff—a streamlined, efficient alternative dispute resolution process-that AAA ultimately failed to provide.  These allegations are sufficient at the pleading stage for the claim to survive. *See Pemberton*, 331 F.Supp.3d at 1051 ("The balancing test should not be a particularly difficult test to satisfy at the motion to dismiss stage."); *Progressive West Ins. Co. v. Superior Court*, 135 Cal.App.4th 263, 287 (2005) ("The balancing test required by the unfair business practice prong of section 17200 is fact intensive and is not conducive to resolution at the demurrer stage.").

Plaintiff's allegations also satisfy the tethering test. The California Legislature has already demonstrated its concern with consumer arbitration by adopting the California Arbitration Act ("CAA"). At the very least, AAA's actions violate the "policy and spirit" of the CAA by thwarting consumers' ability to receive a fair and neutral arbitration hearing. *See Day v. GEICO Casualty Co*., 580 F.Supp.3d 830, 845 (N.D.Cal. 2022); *Cappello v. Walmart Inc*., 394 F.Supp.3d 1015, 1023-24 (N.D.Cal. 2019) (holding that Plaintiffs had alleged an unfair business practice because the defendant's practices contravened California's "well-established public policy of protecting consumer data").

And, finally, Plaintiff also satisfies each prong of the "Section 5" or "FTC" test for unfairness. First, the alleged injuries are substantial—not only the loss of the consumer's fees for an unfair arbitration provision, but the loss of fundamental legal rights caused by Defendants' collusive conduct. Second, the injury is not outweighed by any countervailing benefits to consumers—the benefit of the bargain was supposed to be an efficient alternative dispute resolution process. And third, consumers could not have reasonably avoided the injury because their contracts required them to proceed to arbitration. *See Klein v. Chevron U.S.A., Inc*., 202 Cal.App.4th 1342, 1376 (2012). Given the allegations, dismissing the claim at the motion to

1    dismiss stage would be premature. *See Linear Tech. Corp. v. Applied Materials, Inc.*, 152

2    Cal.App.4th 115, 134-35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is

3    generally a question of fact which requires 'consideration and weighing of evidence from both

4    sides' and which usually cannot be made on demurrer.").

5    **IV.    CONCLUSION**

6         For all of the foregoing reasons, AAA's motion should be denied.

7
8    DATED: March 7, 2025                    **MCCUNE LAW GROUP, APC**

9                                           By: /s/ Richard D. McCune

10                                          Richard D. McCune
                                            Steven A. Haskins
11                                          Valerie L. Savran
                                            Emily J. Kirk
12
13                                          Attorneys for Plaintiff
                                            MARLENE WAGMAN-GELLER and the Putative
14                                          Class

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**
Case No. 3:24-cv-06778-SK

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2025, I electronically filed the foregoing document entitled **OPPOSITION TO MOTION OF AAA TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

Dated: March 7, 2025

By: <u>/s/ Richard D. McCune</u>
Richard D. McCune

**CERTIFICATE OF SERVICE**
Case No. 3:24-cv-06778-SK