**MCGUIREWOODS LLP**
Alicia A. Baiardo SBN #254228
abaiardo@mcguirewoods.com
Todd J. Dressel SBN #220812
tdressel@mcguirewoods.com
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

Amy Morrissey Turk (*pro hac vice granted*)
aturk@mcguirewoods.com
101 West Main Street, Suite 9000
Norfolk, VA 23510
Telephone: 757.640.3700

*Attorneys for Defendants*
*Wells Fargo Bank, N.A. and Wells Fargo and Company*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE WAGMAN-GELLER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., WELLS FARGO & CO, AMERICAN ARBITRATION ASSOCIATION, INC., and DOES 1 through 5, inclusive,<br><br>Defendant. | CASE NO. 3:24-cv-06778-SK<br><br>The Hon. Magistrate Judge Sallie Kim<br><br>**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Courtroom C<br>Hearing Date: April 14, 2025<br>Hearing Time: 9:30 a.m.<br><br>First Amended Complaint Filed: January 31, 2025 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENTS & AUTHORITIES ........................................................................ 2

    A. The Court Should Compel Plaintiff's Claims Back to Arbitration .......................... 2

        1. Plaintiff does not dispute that her Arbitration Agreement requires her underlying claims be submitted to individual arbitration with AAA. ....................................................................................................... 2

        2. Plaintiff cannot avoid arbitration by bringing a baseless "Fraud in the Inducement" claim. ................................................................................ 3

            a. Plaintiff must create a genuine dispute, supported by competent evidence, that she was fraudulently induced to enter her Arbitration Agreement. ..................................................... 3

            b. Plaintiff's fraud claim is based on unsupported allegations contradicted by the record, requiring that Plaintiff be compelled to arbitration. ................................................................... 4

                i. Any delay, additional cost, and inefficiency in Plaintiff's arbitration was caused by MLG, not Wells Fargo. ............................................................................................... 5

                ii. Plaintiff has failed to present evidence of collusion between Wells Fargo and the AAA, or that any alleged collusion prevented Plaintiff from having an impartial forum to arbitrate her dispute. ................................ 8

        3. Plaintiff cannot avoid arbitration because she disagrees with procedural decisions made by arbitrators and AAA. .................................. 10

    B. The Court Should Alternatively Dismiss Plaintiff's Fraud Claim .......................... 11

III. CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................... 3

*Benavidez v. Cnty. of San Diego*,
   993 F.3d 1134 (9th Cir. 2021) .................................................................................... 12

*Garcia v. Gen. Motors LLC*,
   No. 1:18-CV-01313, 2019 WL 1209632 (E.D. Cal. Mar. 14, 2019) ............................... 13, 14

*Golden W. Wings LLC v. ShiftPixy, Inc*,
   No. 8:22-cv-01834-FWS-DFM, 2023 WL 6787815 (C.D. Cal. Sept. 11, 2023) .................... 13

*GoPets Ltd. v. Hise*,
   657 F.3d 1024 (9th Cir. 2011) ....................................................................................... 4

*Hoang v. Reunion.Com, Inc.*,
   No. C-08-3518MMC, 2008 WL 4542418 (N.D. Cal. Oct. 6, 2008) ................................. 12

*Jones v. Starz Ent., LLC*,
   No. 24-1645, 2025 WL 649705 (9th Cir. Feb. 28, 2025) .................................................. 11, 14

*Knowles v. Arris Int'l PLC*,
   No. 17-cv-01834-LHK, 2019 WL 3934781 (N.D. Cal. Aug. 20, 2019) ............................ 12

*Lerner v. CitiGroup*,
   No. 16CV1573KMMAH, 2019 WL 1579512, at *4 (D.N.J. Apr. 12, 2019) ........................... 9

*Lewis v. Anschutz*,
   No. 21-115, 2023 WL 8720297 (D. Mont. Nov. 22, 2023) ............................................. 7, 10

*Lomeli v. Midland Funding, LLC*,
   No. 19-cv-01141-LHK, 2019 WL 4695279 (N.D. Cal. Sept. 26, 2019) ............................ 3, 4

*McCumbeee v. M Pizza, Inc.*,
   No. 3:22-CV-128, 2023 WL 2725991 (N.D. W. Va. Mar. 30, 2023) ................................ 7, 9

*Mosley v. Wells Fargo & Co.*,
   No. 22-CV-01976-DMS-AGS, 2023 WL 3185790 (S.D. Cal. May 1, 2023) .................... 2, 10

*Mosley v. Wells Fargo & Co.*,
   No. 23-55478, 2024 WL 977674 (9th Cir. Mar. 7, 2024) ............................................ 1, 2, 6, 10

*Nghiem v. NEC Elec., Inc.*,
   25 F.3d 1437 (9th Cir. 1994), *cert. denied*, 513 U.S. 1044 (1994) .................................. 3

*Nichols v. Google LLC*,
   No. 23-CV-01022-RMR-NRN, 2023 WL 5938917 (D. Colo. Sept. 12, 2023) ..................... 5

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................ 12

*Olson v. Major League Baseball*,
    29 F.4th 59 (2d Cir. 2022) .................................................................................. 14

*Perez v. Bath & Body Works, LLC*,
    No. 21-CV-05606-BLF, 2022 WL 2756670 (N.D. Cal. July 14, 2022) ............... 12

*Rashidian v. Internal Revenue Serv.*,
    No. 8:14-cv-00016, 2015 WL 13343584 (C.D. Cal. Feb. 26, 2015) ...................... 4

*Regan v. Medieval Knights, LLC*,
    No. 19-01100, 2019 WL 6332164 (C.D. Cal. Aug. 19, 2019) ...................... 4, 7, 10

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ............................................................................................ 11

**Other Authorities**

Fed. R. Civ. P. 56(c)(1)(A) ........................................................................................ 3

## I. INTRODUCTION

McCune Law Group's ("MLG") latest attempt to circumvent arbitration generally argues that Wells Fargo fraudulently induced Plaintiff to enter her Account Agreement based on statements related to the speed, efficiency, and neutrality of arbitration. There are no facts alleged to support this outlandish claim. Plaintiff admits the arbitration provision ("Arbitration Agreement") contained in her Deposit Account Agreement ("Account Agreement") requires any dispute with Wells Fargo be heard in arbitration with the American Arbitration Association ("AAA").

Any inefficiency or delay in the arbitration process was caused by MLG. Plaintiff initiated arbitration in AAA. Unhappy with a Process Arbitrator ruling, her counsel requested a stay of proceedings in AAA so it could go to district court to challenge the Process Arbitrator's ruling. When the arbitrations resumed in AAA (with an appeal pending), MLG continued its attempts to circumvent the Process Arbitrator's rulings, which caused further delay.[1] Plaintiff was one of the few claimants (approximately 11% of MLG's clients) who complied with the Process Arbitrator's order and then began moving forward with her individual merit arbitration. But instead MLG dismissed her arbitration (and all of its claimants' arbitrations).

Plaintiff also ignores the standard she must meet in order to avoid her arbitration agreement, instead simply stating that courts "may apply generally applicable contract defenses – such as fraud – without invalidating the FAA. But in order to avoid Wells Fargo's motion to compel arbitration, Plaintiff's allegations of fraud must meet a summary judgment standard and create a genuine dispute of fact. In asserting her fraud allegations, Plaintiff relies solely on bare allegations and fails to provide a single shred of evidence that she was fraudulently induced into entering the Account Agreement or that Wells Fargo did not provide Plaintiff the arbitration it promised. This is not enough to create a genuine issue of fact as to whether Wells Fargo fraudulently induced Plaintiff.

---

[1] At the same time, the Ninth Circuit decisively affirmed the district court's decision finding that MLG—and not Wells Fargo—was delaying arbitration. *See Mosley v. Wells Fargo & Co.*, No. 23-55478, 2024 WL 977674, at *1 (9th Cir. Mar. 7, 2024) [hereinafter the "*Mosley Appellate Order*"] ("Claimants have refused to comply with information requests from Wells Fargo **after months of arbitration** and a [Process Arbitrator] Order and now seek to circumvent the PA Order in federal court.") (emph. added).

-1-  CASE NO. 3:24-cv-06778-SK
DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

Plaintiff's allegations not only fail to provide evidence sufficient to create a genuine issue, but they are also directly contradicted by the record. Plaintiff claims Wells Fargo defrauded her in two ways. First, by promising but not providing an arbitration that was faster, less costly, and more administratively efficient than a typical court case. Second, by promising arbitration with an impartial third-party while "colluding" with AAA to prevent Plaintiff "from access to any substantive forum in which" she "might receive a fair hearing." Despite Plaintiff's allegations, the record establishes that: (1) any delay or inefficiency in Plaintiff's arbitration was caused by MLG, not Wells Fargo; and (2) Plaintiff's allegations of collusion relate to actions taken after MLG initiated its mass arbitration and are therefore not relevant to Plaintiff's arbitration.

In reality, Plaintiff's fraud claim seeks to relitigate procedural orders and decisions entered in MLG's mass arbitration by the Process Arbitrator, merit arbitrators, and the AAA. But procedural orders in arbitration are not reviewable by federal courts—as Plaintiff and MLG are well aware based on the Ninth Circuit's decision on MLG's prior attempt to avoid this mass arbitration. *See Mosley Appellate Order*, 2024 WL 977674, at *1 ("It is well-settled that questions of procedure relating to arbitration are outside of the purview of the federal courts.").

At bottom, Plaintiff cannot avoid arbitration by vaguely alleging a baseless fraud claim directly contradicted by the record. Plaintiff must be compelled to arbitration. In the alternative, the Court should dismiss Plaintiff's fraudulent inducement claim for failure to state a claim.

## II.     ARGUMENTS & AUTHORITIES

### A.     The Court Should Compel Plaintiff's Claims Back to Arbitration

#### 1.     Plaintiff does not dispute that her Arbitration Agreement requires her underlying claims be submitted to individual arbitration with AAA.

Plaintiff does not dispute that her Account Agreement—which she originally entered in 2011—contains an arbitration provision requiring that her underlying claims be submitted to individual arbitration with AAA. Plaintiff acknowledged as much when she submitted her demand to AAA's authority—which she also does not dispute. *See* Dkt. No. 44 ("Opp.") at 3. This alone requires that her claims be compelled to arbitration. *See, e.g.*, *Mosley v. Wells Fargo & Co.*, No. 22-CV-01976-DMS-AGS, 2023 WL 3185790, at *4 (S.D. Cal. May 1, 2023), *aff'd*, No. 23-55478,

2024 WL 977674 (9th Cir. Mar. 7, 2024) [hereinafter, the "*Mosley DC Order*"] ("Once a party demands arbitration, as here, the party has submitted to the authority of the arbitral tribunal."); *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994), *cert. denied*, 513 U.S. 1044 (1994).

### 2. Plaintiff cannot avoid arbitration by bringing a baseless "Fraud in the Inducement" claim.

In a last-ditch attempt by Plaintiff (through her counsel MLG) to avoid the binding arbitration she invoked, Plaintiff alleges that Wells Fargo "fraudulently induced" her into entering her Account Agreement based on language related to her requirement to arbitrate disputes with Wells Fargo. Opp. at 8-9. But Plaintiff provides only bare allegations in support of her fraud claim. Indeed, Plaintiff provides ***no supporting evidence***, while Wells Fargo has provided evidence directly contradicting Plaintiff's allegations. MLG was upset with procedural decisions within the mass arbitration and dismissed Plaintiff's (and all of its clients') arbitration because MLG determined it was not a lucrative endeavor for the firm. As a result, there is no basis for Plaintiff to avoid arbitration of her dispute.

#### a. Plaintiff must create a genuine dispute, supported by competent evidence, that she was fraudulently induced to enter her Arbitration Agreement.

Plaintiff states that when determining the enforceability of an arbitration agreement, "courts may apply generally applicable contract defenses – such as fraud – without invalidating the FAA." Opp. at 8. But Plaintiff ignores the evidence it must submit in establishing alleged fraud in order to avoid enforcement of an arbitration agreement.

When considering a motion to compel arbitration, "a court applies a standard similar to the summary judgment standard" of Federal Rule of Civil Procedure 56. *See Lomeli v. Midland Funding, LLC*, No. 19-cv-01141-LHK, 2019 WL 4695279, at *4 (N.D. Cal. Sept. 26, 2019). In doing so, a court must determine "whether there is a genuine factual issue for trial." *Id.* A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). As a result, the nonmoving

party's opposition must consist of more than unsupported allegations or denials. *Lomeli*, 2019 WL 4695279, at *4 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Rather, it must, through affidavits, declarations, or other competent evidence, set forth "specific facts showing that there is a genuine issue for trial." *Id.*

Thus, if Plaintiff cannot support her allegations of fraud with competent evidence, she must be compelled to arbitration. *See, e.g.*, *Regan v. Medieval Knights, LLC*, No. 19-01100, 2019 WL 6332164, at *2-3 (C.D. Cal. Aug. 19, 2019) (granting motion to compel arbitration when plaintiff's allegations of fraud were "severely lacking" and plaintiff failed to meet the "judicial posture with adequate proof"). And Plaintiff is not entitled to a second chance to present new evidence after failing to proffer evidence at this stage. *See, e.g.*, *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1029 (9th Cir. 2011) (affirming district court's refusal to consider "supplemental materials" in ruling on summary judgment because neither the federal nor the local rules required it to give the responding party "yet another bite at the apple"); *Rashidian v. Internal Revenue Serv.*, No. 8:14-cv-00016. 2015 WL 13343584, at *3 (C.D. Cal. Feb. 26, 2015) (recognizing that no case law permits a party that filed an inadequate opposition to a summary judgment to be given a "second bite of the apple" to submit additional argument or evidence available at the time of the original filing). As explained below, Plaintiff wholly fails to provide any evidence of fraud, and instead relies on bare allegations unsupported by fact or law. As a result, her fraud claim must fail.

### b. Plaintiff's fraud claim is based on unsupported allegations contradicted by the record, requiring that Plaintiff be compelled to arbitration.

MLG claims that Wells Fargo fraudulently induced Plaintiff in two ways. First, by not providing an arbitration that was faster, less costly, or more administratively efficient than typical court proceedings despite making promises that arbitration was "more streamlined" and "cost effective" than a "typical court case" and that Wells Fargo "hope[d]" to resolve disputes with Plaintiff "as quickly and as easily as possible." Opp. at 10-11.[2] Second, by promising that an

---

[2] One court has held that representations about the quick and cost-effective nature of arbitration are "not fraudulent" because "a party [may] express a preference for arbitration over traditional

impartial third-party would hear the dispute and provide a decision, but "colluding" with AAA to "create[ ] a structural bias that contradicts Wells Fargo's and AAA's claims of neutrality." Opp. at 12. Plaintiff, however, fails to create a genuine issue of fact that Wells Fargo's purported promises were false. To the contrary, both claims are unsupported by evidence and directly contradicted by the record. As a result, the Court should compel Plaintiff to arbitration.

> **i. Any delay, additional cost, and inefficiency in Plaintiff's arbitration was caused by MLG, not Wells Fargo.**

As to Plaintiff's first allegation, Plaintiff claims that "[r]ather than receiving the individualized dispute resolution process promised, Plaintiff was funneled into a mass arbitration that was stalled for over a year while Wells Fargo litigated against consolidation – directly contradicting its own justification for mandatory arbitration." Opp. at 12-13. This allegation contradicts the facts.

First, Plaintiff was not "funneled into a mass arbitration." MLG filed nearly 4,000 claims en masse in AAA (including Plaintiff's claims) and then specifically agreed to AAA's application of its Supplementary Rules for Multiple Case Filings ("Supplementary Rules") to the mass arbitration. Dkt. No. 36 ("Baiardo Decl.") ¶¶ 3-4, 6, n.3, Ex. 5. MLG then willingly participated in the selection and appointment of the Process Arbitrator. *Id.* ¶¶ 4, 6, n.3, Ex. 5. Second, Wells Fargo also did not "litigate[ ] against consolidation,"[3] but ***responded*** to litigation brought by MLG seeking to circumvent the Process Arbitrator's orders. *See id.* ¶¶ 22, 24, 26, 41, 42. The Ninth Circuit confirmed that it was MLG, and not Wells Fargo, who had caused delay in the arbitration

---

litigation, particularly considering public policy favoring arbitration for dispute resolution." *Nichols v. Google LLC*, No. 23-CV-01022-RMR-NRN, 2023 WL 5938917, at *4 (D. Colo. Sept. 12, 2023), *report and recommendation adopted*, No. 23-CV-01022-RMR-NRN, 2023 WL 9232937 (D. Colo. Oct. 11, 2023).

[3] MLG has specifically and repeatedly argued that Wells Fargo would breach its arbitration agreement if it imposed collective procedures and offered MLG's claimants anything but the bilateral, individual arbitrations promised in their agreements. Dkt. No. 35 ("Mot. to Compel") at n.9. It is intellectually dishonest for MLG to now argue that Wells Fargo's refusal to agree to the collective procedures contemplated in the "Notice of Suspension in Arbitration" MLG submitted to AAA ("July 12 Notice") somehow equates to fraud against Plaintiff. *See* Baiardo Decl. ¶¶ 55-58, Exs. 74-77.

proceedings. *See Mosley Appellate Order*, 2024 WL 977674, at *1 ("Claimants have refused to comply with information requests from Wells Fargo after months of arbitration and a PA Order and now seek to circumvent the PA Order in federal court.").

Moreover, while the litigation MLG initiated was pending, MLG further attempted to circumvent the Process Arbitrator's orders within AAA, which led to additional delays in Plaintiff's arbitration. After the district court entered the *Mosley DC Order* on May 1, 2023 (and because there was no stay while MLG's appeal to the Ninth Circuit was pending), the mass arbitration continued. Baiardo Decl. ¶¶ 25-26, Exs. 30, 31, 32. On June 14, 2023—because MLG had ignored the October 27, 2023 order ("October 23 PA Order)—the Process Arbitrator entered an order that set forth dates for which MLG and claimants (including Plaintiff) were required to comply with her previous order (the "June 14 PA Order"). *Id.* at ¶ 26, Ex. 32. Rather than abide by the deadlines set forth in the June 14 PA Order, MLG sought to circumvent the Process Arbitrator's rulings by improperly seeking to amend claimants' demands. *Id.* at ¶ 27, 28, Exs. 33-36. When MLG finally attempted to comply with the October 27 PA Order by the June 14 PA Order's deadlines, it failed to do so clearly, which required additional briefing. *Id.* at ¶¶ 29-34, Exs. 37-45, 45-53. The Process Arbitrator then entered an order on November 10, 2023 ("November 10 PA Order"), which permitted MLG to file a renewed motion to amend. *Id.* at ¶ 35, Ex. 46. MLG filed a renewed motion to amend on December 1, 2023. *Id.* at ¶ 36, Ex. 47. After full briefing, the Process Arbitrator entered an order on January 10, 2024 (the "January 10 PA Order"). *Id.* ¶¶ 37-39, Exs. 48-50. AAA then began moving forward with the administration of individual merit arbitrations for claimants, including Plaintiff, who met the requirements in the October 27 PA Order.[4] *Id.* ¶ 40. Thus, any delay in moving forward with Plaintiff's individual arbitration was caused by MLG's repeated attempts to avoid complying with

---

[4] Plaintiff alleges that "her claim was not permitted to proceed until all claimants passed through the administration phase." Opp. at 5. This is false. From the beginning, any claimant wishing to proceed to their individual arbitration simply needed to submit a demand meeting the requirements of the Process Arbitrator's October 27 PA Order. *See* Baiardo Decl. ¶ 14, Ex. 16. But as explained above, MLG attempted to collectively circumvent the Process Arbitrator's orders on behalf of all claimants rather than perform the diligence required by the October 27 PA Order and move forward with arbitrations on behalf of claimants whose demands met the order's requirements.

the Process Arbitrator's orders, and not any action by Wells Fargo.

In fact, Plaintiff has not even alleged that her arbitration was less streamlined and less cost-effective than a typical court case, let alone provided evidence that Wells Fargo's purported promise was false. Rather, Plaintiff simply alleges that Wells Fargo's statements were "false," "untrue," and that Plaintiff received the "opposite" of a "simple, streamlined, and efficient process." Opp. at 11 (citing FAC ¶¶ 19-20). Plaintiff alleges that Wells Fargo's assertions "are objectively measurable" because "they can be tested by comparing arbitration costs and procedural timelines against court proceedings." Opp. at 11. Yet they provide no data or evidence to support their proposition. Plaintiff then argues that "*[i]f*, in reality, arbitration is slower, more costly, or administratively inefficient, then the statement is false or misleading and serves as grounds for fraudulent included." *Id.* (emph. added). But Plaintiff fails to allege—and let alone provide evidence—that her arbitration was slower, more costly, or more administratively inefficient than a typical court case. *See* Opp. at 11-12 (citing FAC ¶¶ 1, 8-11, 15-20, 127-134).

Because Plaintiff fails to allege and provide evidence that Wells Fargo's statements about the speed and efficiency of arbitration were false, and because the facts contradict Plaintiff's general assertion that Wells Fargo was responsible for any purported delays, costs, or inefficiencies, her claims must be compelled to arbitration. *McCumbeee v. M Pizza, Inc.*, No. 3:22-CV-128, 2023 WL 2725991, at *5-8 (N.D. W. Va. Mar. 30, 2023) (granting motion to compel arbitration where plaintiff made "only baseless, and at times inconsistent, allegations" of fraud and provided no supporting documentation or other evidence of fraud, when in contrast defendant provided "substantial, concrete evidence" to rebut the allegations of fraud); *Lewis v. Anschutz*, No. 21-115, 2023 WL 8720297, at *4-5 (D. Mont. Nov. 22, 2023), *report and recommendation adopted*, No. CV 21-115-BLG-SPW, 2023 WL 8716855 (D. Mont. Dec. 18, 2023) (granting motion to compel arbitration where plaintiff failed to present evidence of fraud, there was "nothing in the record to support the claim" of fraud, and there was "significant evidence in the record" to show a lack of fraud); *see also Regan*, 2019 WL 6332164, at *2-3.

      **ii.**  **Plaintiff has failed to present evidence of collusion between Wells Fargo and the AAA, or that any alleged collusion prevented Plaintiff from having an impartial forum to arbitrate her dispute.**

  Throughout Plaintiff's opposition she claims that Wells Fargo's allegedly "collusive" relationship with AAA resulted in a failure to provide her a fair and neutral forum to resolve her dispute, in contradiction to Wells Fargo's purported promise to do so. Plaintiff provides only two allegations in support of this claim: (1) that Wells Fargo "actively participated in shaping the arbitration rules and procedures that it simultaneously promised were more efficient and cost-effective" (Opp. at 12-13 (citing FAC ¶¶ 21-23, 53-56, 133)); and (2) that AAA's Council is "dominated by law firms representing banks and other large corporations" (Opp. at 12-13; *see also* FAC ¶¶ 53-54, Ex. G)—notably *not* Wells Fargo's counsel in this matter. Plaintiff's baseless allegations are contradicted by the record and the law.

  Plaintiff claims that Wells Fargo shaped "AAA's approach to mass arbitrations to its advantage" is based on the allegations that: (1) Mayer Brown purportedly represented Wells Fargo at some point in time (Plaintiff does not state when or what case Mayer Brown represented Wells Fargo; Mayer Brown is not Wells Fargo's counsel in this case); (2) a Mayer Brown attorney is on AAA's Council; and (3) four different attorneys from Mayer Brown LLP drafted a whitepaper in February 2023 on behalf of the U.S. Chamber of Commerce ("Chamber") pointing out and proposing solutions to the abuses stemming from mass arbitrations.[5] *See* Opp. at 13 (citing FAC ¶¶ 56, 133). These allegations do not show collusion between AAA and Wells Fargo.

  Plaintiff ignores that the Mayer Brown attorney who is on AAA's Council (Charles E. Harris, II) is not one of the attorneys who drafted the Chamber's whitepaper. *Compare* FAC Ex. G at 28 *with* FAC Ex. H at 3. Plaintiff also ignores that Mayer Brown is not involved in this case, and that the attorneys in this case are not on AAA's Council. The fact that Mayer Brown may have

---

[5] It is ironic MLG cites to the Chamber's whitepaper, as the article highlights the very same abuses with mass arbitration that MLG engaged in, leading the Process Arbitrator to enter orders requiring MLG to provide basic information supporting claimants' allegations. *Compare* FAC Ex. H (Dkt. No. 24-8) at 36-42 (discussing abuses related to "Solicitation," "Ethics in Advertising," and "Client-Specific Investigation") *with* Baiardo Decl. ¶¶ 8-14, 16, 33-35, 37, 40, Exs. 10-13, 15-16, 43, 45-46, 48, 50.

represented Wells Fargo in some other unnamed and uncited case and also happens to have an attorney on AAA's Council cannot support an allegation of collusion between Wells Fargo and AAA.

Plaintiff further ignores that the Chamber's whitepaper was published in February 2023—well after AAA appointed the Process Arbitrator in July 2022 pursuant to the Supplementary Rules in effect at that time, and four months after the Process Arbitrator entered her first order in October 2022. Baiardo Decl. ¶ 4, 6 n.2, Exs. 4, 5. Plaintiff's claim that "no existing [AAA] rules permit[ed]" the appointment of a process arbitrator at the time of the initiation of its mass arbitration (Opp. at 13) is, thus, ***objectively false***. And Plaintiff and MLG ***know that this claim is false***, as MLG sent a letter to AAA on **April 25, 2022**—ten months before the Chamber's whitepaper—specifically requesting that AAA incorporate the Supplementary Rules to its mass arbitration. *Id.* ¶ 4, Ex. 5. Plaintiff has presented no plausible evidence that Wells Fargo "actively participated in shaping" AAA's rules.

Plaintiff's contention that the makeup of AAA's Council supports a finding of a collusive relationship between Wells Fargo and AAA such that AAA is not a neutral forum for consumers fares no better. Plaintiff provides no evidence as to how the makeup of AAA's Council creates a collusive relationship between Wells Fargo and AAA such that AAA is not a neutral forum for Plaintiff. In fact, Plaintiff ignores that AAA's Council also includes former judges and attorneys who primarily represent consumers. *See* FAC, Ex. G at 27-29. Plaintiff's opposition also fails to address the court's holding in *Lerner v. Citigroup*, which rejected a virtually identical argument of an alleged bias by AAA that Plaintiff sets forth here. No. 16CV1573KMMAH, 2019 WL 1579512, at *4 (D.N.J. Apr. 12, 2019), *aff'd*, 838 F. App'x 682 (3d Cir. 2020); *see also* Mot. to Compel at 19-20.

Plaintiff has alleged bare assertions of Wells Fargo's purported fraud and has otherwise provided no evidence supporting its allegations. To the contrary, the record establishes that Plaintiff's allegations are unsubstantiated. As a result, Plaintiff has not created a genuine issue of fact related to her fraud claim, and the Court must compel Plaintiff's claims to arbitration. *See McCumbeee*, 2023 WL 2725991, at *7 (granting motion to compel arbitration despite "serious

assertions of fraud" because when a plaintiff "provides no tangible evidence to support his assertions … Plaintiff's assertions are merely that—assertions" and "uncorroborated, self-serving testimony of a plaintiff is not sufficient to create a material dispute of fact"); *see also Lewis*, 2023 WL 8720297, at *4-5; *Regan*, 2019 WL 6332164, at *2-3.

### 3. Plaintiff cannot avoid arbitration because she disagrees with procedural decisions made by arbitrators and AAA.

Plaintiff's opposition confirms that her true intentions are to dispute procedural decisions made by the Process Arbitrator, merit arbitrators (unrelated to her own individual arbitration), and AAA within MLG's mass arbitration. Although generally couching the argument as "fraud," Plaintiff in support of her fraud claim alleges: (1) the Process Arbitrator ignored MLG's argument that the information necessary to meet the Process Arbitrator's procedural orders is in Wells Fargo's possession (Opp. at 4-5 (citing FAC ¶¶ 22, 56)); (2) merit arbitrators permitted Wells Fargo to argue and brief disputed issues in individual arbitrations related to discovery, amendment, and in-person hearings and depositions (Opp. at 5-6 (citing FAC ¶¶ 21-25, 119, 133)); and (3) AAA appointed a process arbitrator and refused to implement the collective procedures demanded in MLG's "Notice of Suspension in Arbitration" ("July 12 Notice")[6] (*id.*; *see also* FAC ¶ 56).

These procedural decisions are not subject to judicial review, let alone do they provide Plaintiff a means to avoid her Arbitration Agreement. As to the Process Arbitrator orders, the Ninth Circuit has already unequivocally determined that such orders are not subject to judicial review. *Mosley Appellate Order.*, 2024 WL 977674, at *1. Plaintiff's allegations about procedural decisions made by the merit arbitrators are subject to the same analysis. *Mosley Appellate Order*, 2024 WL 977674, at *1 ("Procedural questions involved in arbitration are 'submitted to the arbitrator, either expressly or implicitly, along with the merits of the dispute.'") (quoting *McKesson Corp. v. Loc. 150 IBT*, 969 F.2d 831, 834 (9th Cir. 1992)); *see also Mosley DC Order*, 2023 WL 3185790, at *4 ("[I]t is well-settled that questions of procedure relating to arbitration are not reviewable by

---

[6] Plaintiff disregards the July 12 Notice in her opposition—likely because it shows the contradictory positions taken by MLG concerning the requirement of bilateral, individual arbitrations (*see supra*, n.2) and that MLG was strictly concerned with its own profits (*see* Mot. to Compel at 11).

courts."); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) ("[P]rocedural questions which grow out of [a] dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide.").

Plaintiff's arguments related to AAA's decisions in administering MLG's mass arbitration are similarly not subject to judicial review. As the Ninth Circuit recently noted:

> It strains credulity to believe that it is the business of a federal court to second-guess an independent arbitration provider's application of its own rule … nobody here is denying that [the Company's] Terms contain a valid arbitration agreement or that the agreement covers the dispute at issue. [Plaintiff] may be dissatisfied with [the arbitration provider's] interpretation of its own rules, but the [ ] Rules are what she agreed to and she can seek recourse within those Rules. ***We cannot be made to do the bidding of every unhappy arbitration claimant, and especially not one who is already in arbitration***.

*Jones v. Starz Ent., LLC*, No. 24-1645, 2025 WL 649705, at *6-7 (9th Cir. Feb. 28, 2025) (emph. added).

The Court should ignore Plaintiff's "fraud" claim and see this lawsuit for what it is: MLG's attempt to get out of the mass arbitration it initiated because it did not agree with the procedural decisions entered therein. Because such decisions are not subject to judicial review, the Court must compel Plaintiff to arbitration.

**B.     The Court Should Alternatively Dismiss Plaintiff's Fraud Claim**

Because Plaintiff's fraud allegations fail to create a material dispute fact, she must be compelled to arbitration as required by her Arbitration Agreement. But in the alternative, if Plaintiff is not compelled to arbitration, her fraudulent inducement claim should be dismissed because she fails to plead facts sufficient to support her claim. Plaintiff's opposition fails to show otherwise.

To begin, Plaintiff's opposition does not even try to respond to Wells Fargo's argument that her allegations do not meet the required specificity of Rule 9(b). *See* Mot. to Compel at 20-21. Plaintiff still fails to allege or explain why the purportedly false statements were individually false, when Plaintiff received the statements, how they were made to her, or whether they were relied on. Instead, Plaintiff states that the "FAC alleges several false statements" and that "if, in reality" those statements are false, then she may have an actionable claim. *See* Opp. at 10-11. But Plaintiff does

not allege how or why Wells Fargo's statements were false. Plaintiff's opposition also fails address the issue that Plaintiff has not alleged when or how she received the purportedly false statements. Plaintiff has thus failed to meet the requirements of Rule 9(b). *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) ("Particularity includes the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false.") (internal quotations omitted); *Hoang v. Reunion.Com, Inc.*, No. C-08-3518MMC, 2008 WL 4542418, at *2 (N.D. Cal. Oct. 6, 2008) (dismissing fraud claim where plaintiffs failed to allege with the requisite specificity why the statements at issue were false and why defendant knew they were false when made).

Plaintiff's opposition also fails to overcome the fact that her allegations do not support a fraudulent inducement claim.

First, Plaintiff cannot show that the purportedly false statements rise to the level of a misrepresentation. *See* Mot. to Compel at 21. Plaintiff argues that Wells Fargo's statement that arbitration is "more streamlined" and "cost-effective" than a "***typical*** court case" is actionable because it is "objectively measurable" and can "be tested by comparing arbitration costs and procedural timelines against ***traditional*** court proceedings." Opp. at 11 (emph. added). But Plaintiff fails to explain how the phrase "typical court case" is anything but a ***subjective opinion*** on timing. Subjective opinions of speed are "frequently held to be puffery." *Perez v. Bath & Body Works, LLC*, No. 21-CV-05606-BLF, 2022 WL 2756670, at *5 (N.D. Cal. July 14, 2022) (concluding subjective statements based on speed were puffery); *see also Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008) (statement that product was "faster" was non-actionable puffery); *Knowles v. Arris Int'l PLC*, No. 17-cv-01834-LHK, 2019 WL 3934781, at *12 (N.D. Cal. Aug. 20, 2019) (statement that product offered "lightning-fast [ ] speed" was non-actionable puffery).

Second, Plaintiff's opposition does not overcome the fact that Wells Fargo could not have known its purported misrepresentations were false at the time they were made. Because Plaintiff has failed to allege, as required by Rule 9(b), when Plaintiff allegedly received Wells Fargo's purportedly false statements, it is impossible to determine the date for which Wells Fargo's

knowledge must be analyzed. As a reminder, Plaintiff first entered into an Arbitration Agreement with Wells Fargo in 2011. Dkt. No. 37 ("Ward Decl.") at ¶ 2. If she received the purportedly false statements then, Plaintiff fails to allege that Wells Fargo knew of any alleged falsity at that time. *See* Opp. at 12-13 (citing FAC ¶¶ 52-57, 133) (alleging knowledge of falsity based on 2022 AAA financial report and the Chamber's February 2023 whitepaper). But even assuming she did not receive the allegedly false statements until she received the November 2022 Deposit Account Agreement in effect at the time she filed her Arbitration Demand, Plaintiff fails to establish how Wells Fargo had knowledge that her arbitration would be less "streamlined" or "cost effective" than a "typical court case" *at that time*. Indeed, it is impossible for Wells Fargo to know how any arbitrations (including Plaintiff's) will proceed until the arbitration takes place. Plaintiff's opposition does not cite a single case supporting its proposition that a party can know of an allegedly false statement before the subject of the statement has occurred. Plaintiff's claim must fail. *See, e.g.*, *Golden W. Wings LLC v. ShiftPixy, Inc*, No. 8:22-cv-01834-FWS-DFM, 2023 WL 6787815, at *6 (C.D. Cal. Sept. 11, 2023) (dismissing fraud claim based on the implausibility that defendant knew purported false statements were false at the time they were made).

Third, Plaintiff fails to allege that Wells Fargo intended to defraud her. Plaintiff's opposition cites courts holding that intent is a question of fact, but this misses the point. *See* Opp. at 13 (citing *Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1151 (E.D. Cal. 2017)). As Plaintiff recognized, she must "***show*** that the defendant intended to induce reliance." *See id.* (emph. added). Plaintiff's sole allegations related to Wells Fargo's intent are that Wells Fargo's statements "were intended to induce Plaintiff" and that Wells Fargo "intended that such misrepresentations would induce customers." FAC ¶¶ 19, 137. Plaintiff's allegations do not "show" Wells Fargo's intent, but simply recite an element necessary to support Plaintiff's fraud claim. Plaintiff's allegations do not state a claim. *Garcia v. Gen. Motors LLC*, No. 1:18-CV-01313, 2019 WL 1209632, at *2 (E.D. Cal. Mar. 14, 2019) ("A pleading is insufficient if it offers mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Fourth, Plaintiff cannot overcome her failure to allege that she justifiably relied on Wells

Fargo's allegedly false statements. *See* Mot. to Compel at 22-23. Plaintiff seemingly acknowledges her failure to adequately plead reliance, and instead argues that she need not do so because Wells Fargo's statements were material to her entering the agreement. Opp. at 14-15. In support of her argument, Plaintiff cites to courts holding that a misrepresentation is material where "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action ***in the transaction in question***." Opp. at 15 (citing *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 976-77 (1997)) (emph. added). The transaction at issue here is Plaintiff entering into the Account Agreement. The Account Agreement governs the relationship between Wells Fargo and Plaintiff related to Plaintiff's consumer account, including the account's fee schedule, interest rates, privacy, and additional disclosures. *See* FAC, Ex. C at 2. Plaintiff fails to allege how Wells Fargo's statements about arbitration were material to her entering into the Account Agreement. Because Plaintiff has not alleged that she relied on Wells Fargo's purportedly false statements or that the statements were material to her decision to enter into the Account Agreement, her claim fails. *See, e.g.*, *Garcia*, 2019 WL 1209632, at *5; *Olson v. Major League Baseball*, 29 F.4th 59, 76 (2d Cir. 2022) (analyzing *Engalla* and holding "conclusory allegations—vague awareness or reliance—cannot support a claim for fraud and therefore warrant dismissal of such a claim even at the motion to dismiss stage").

Fifth, Plaintiff cannot establish damages because she voluntarily dismissed her claim. Plaintiff argues that she has suffered damages based on her "fruitless efforts" in pursuing an arbitration she claims she never received. Opp. at 15-16. But Wells Fargo provided Plaintiff the arbitration it promised. As discussed above, it was Plaintiff's counsel—not Wells Fargo—that delayed her arbitration. *See supra*, § II.A.2.b.i. And when it came time for Plaintiff to move forward with her individual merit arbitration, Plaintiff dismissed her claim and refused to arbitrate. The Ninth Circuit has held that a plaintiff is not aggrieved where, although she claims she is being prevented from an arbitration hearing, she in fact has avenues of relief. *Jones*, 2025 WL 649705, at *5 (9th Cir. Feb. 28, 2025) ("Indeed, from a practical standpoint, we are unconvinced that Jones is aggrieved at all. Contrary to her grievance that she is being prevented from a hearing on the merits of her claim, there remain avenues of relief available to Jones."). Because Plaintiff was afforded an

individual arbitration hearing but declined to pursue it, she cannot claim to have suffered damages caused by Wells Fargo.

Plaintiff cannot establish any element of her fraudulent inducement claim. It must be dismissed.

## III.   CONCLUSION

Wells Fargo requests that the Court grant its motion to compel arbitration under Section 3 of the FAA, stay the instant proceedings pending completion of Plaintiff's individual arbitration with Wells Fargo or, in the alternative, dismiss Plaintiff's fraudulent inducement claim.

DATED: March 21, 2025                    **MCGUIREWOODS LLP**

By:   */s/ Alicia A. Baiardo*
Alicia A. Baiardo
Amy Morrissey Turk (*pro hac vice granted*)
Todd J. Dressel

Attorneys for Defendants Wells Fargo & Co. and Wells Fargo Bank, N.A.

# CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2025 I electronically filed the foregoing document entitled **DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

*/s/ Alicia A. Baiardo*
Alicia A. Baiardo