1   Michael L. Smith (State Bar No. 160305)
      *michael.smith@manningkass.com*
2   Mark R. Wilson (State Bar No. 293474)
      *mark.wilson@manningkass.com*
3   **MANNING & KASS**
    **ELLROD, RAMIREZ, TRESTER LLP**
4   101 Montgomery Street, Suite 2550
    San Francisco, California 94104
5   Telephone: (415) 217-6990
    Facsimile: (415) 217-6999
6
    Attorneys for Defendant, AMERICAN
7   ARBITRATION ASSOCIATION, INC.

8

                    **UNITED STATES DISTRICT COURT**
9
                  **NORTHERN DISTRICT OF CALIFORNIA**
10

11
    MARLENE WAGMAN-GELLER,                  Case No. 3:24-cv-06778-SK
12  individually, and on behalf of all others
    similarly situated,                     **DEFENDANT AMERICAN**
13                                          **ARBITRATION ASSOCIATION, INC.'S**
              Plaintiff,                     **REPLY TO DISMISS PURSUANT TO**
14                                          **FED. R. CIV. P. 12(B)(6)**
          v.
15                                          **Hearing Date:**   **April 14, 2025**
    WELLS FARGO BANK, N.A., WELLS           **Time:**           **9:30 a.m.**
16  FARGO & CO., AMERICAN                   **Courtroom:**      **C**
    ARBITRATION ASSOCIATION, INC., and
17  DOES 1 through 5, inclusive,            Action Filed:    September 26, 2024
                                            Trial Date:      None Set
18            Defendants.

19

20          Plaintiff's opposition to Defendant American Arbitration Association, Inc. (AAA)'s motion

21  to dismiss fails to provide the Court with a reason not to grant the motion and dismiss AAA.

22  Crucially, Plaintiff does not overcome AAA's arbitral immunity and her opposition confirms that

23  her grievances with AAA arise from the arbitration process itself, for which it is immune from suit.

24  The motion should be granted, and AAA should be dismissed from this action with prejudice.

25  / / /

26  / / /

27  / / /

28  / / /

**MK MANNING | KASS**

# I.    PLAINTIFF HAS FAILED TO DEMONSTRATE AAA IS NOT ENTITLED TO ARBITRAL IMMUNITY

In an attempt at an end-run around arbitral immunity, Plaintiff contends such immunity does not protect AAA's alleged failure to provide a timely decision on Plaintiff's claim. ECF No. 42 at 10. In order to obviate arbitral immunity, however, Plaintiff must tie a purported delay in decision-making to something *outside* the arbitration process itself, as arbitral immunity shields the arbitrator, and the AAA, from lawsuits related to the exercise of the arbitrator's quasi-judicial functions. See *La Serena Properties, LLC v. Weisbach*, 186 Cal.App.4th 893, 905-906 (2010). She cannot do so, and has not done so.

Citing *Morgan Phillips, Inc. v. JAMS/Endispute, LLC*, 140 Cal.App.4th 795 (2006), Plaintiff contends AAA's alleged acts of not providing what Plaintiff believes is a timely decision places AAA outside the bounds of arbitral immunity. ECF No. 42 at 8. But *Morgan Phillips* is distinguishable and has no relevance to the facts of the instant amended complaint. In *Morgan Phillips*, the plaintiff alleged that the arbitrator "improperly withdrew from the arbitration proceeding, without cause, following evidence and argument in order to coerce a settlement, and refused to render an arbitration award." *Id*. at 800. The California Court of Appeal noted, "California common law has recognized a narrow exception to arbitral immunity: the immunity does not apply to the arbitrator's breach of contract by failing to make any decision at all." *Id*. at 801 (citations omitted).

Here, there is nothing remotely close to what happened in *Morgan Phillips*. There is no allegation AAA or an arbitrator abandoned their duties. There is no allegation any arbitrator suddenly withdrew from arbitration. And there is no allegation the arbitrator in Plaintiff's case, or any case in which any putative class members were parties, refused to render an award. The *only* claims advanced by Plaintiff with respect to AAA are that arbitration is, from Plaintiff's subjective point of view, not as fast or cost-effective as AAA allegedly claimed it was. ECF No. 24 ¶¶ 128-134, 154. These vague, generalized allegations of untimeliness and expense are a far cry from the specific claims made in *Morgan Phillips*.

It is also worth noting that *this Plaintiff* in *this case* does not actually allege that *her*

**DEFENDANT AMERICAN ARBITRATION ASSOCIATION, INC.'S REPLY TO MOTION TO DISMISS**

MANNING | KASS

1   *arbitration* was time- or cost-intensive. She offers no actual facts regarding *her own arbitration*.

2   And at no point does she ever actually allege that a "timely decision" (ECF No. 42 at 6) was not

3   made as to *her* claim, nor does she explain what "timely" means in this context. She offers only

4   broad allegations to the effect that AAA generally makes the arbitration process time-consuming,

5   but she does not allege *her own* award was delayed. In fact, the only mention of Plaintiff,

6   specifically, is at paragraph 58 of the amended complaint, where all she alleges is that she was a

7   Wells Fargo account-holder who was assessed improper charges. There are otherwise no allegations

8   made with respect to Plaintiff's own experiences in any AAA-administered arbitration with Wells

9   Fargo.[1]

10         Furthermore, as AAA noted in its motion, Plaintiff's claim of untimeliness and expense

11   necessarily arise from AAA's alleged conduct during arbitrations, meaning even if the

12   representations in AAA's marketing materials turned out to be false (which they were not), they

13   were only so due to AAA's conduct during arbitrations, which is protected by arbitral immunity.

14   *See Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1159 (10th Cir. 2007)

15   (arbitral immunity applies where "the claim at issue arises out of a decisional act"). Plaintiff's

16   opposition confirms that her complaints and those of the putative class arise solely out of AAA's

17   arbitral functions when she contends, for example, in her opinion, AAA arbitrators demand too

18   much briefing. ECF No. 42 at 5-6; ECF No. 24 ¶ 133. Whether and how much briefing to require

19   falls squarely within the exercise of arbitral functions. *See Wasyl, Inc. v. First Boston Corp.*, 813

20   F.2d 1579, 1582 (9th Cir. 1987); *Cort v. American Arbitration Assn.*, 795 F.Supp. 970, 973 (N.D.

21   Cal. 1992) (holding that arbitral immunity applied because "[t]he acts complained of by plaintiff

22   clearly fall into the category of acts performed during the course of resolving a dispute between the

23   parties"). Plaintiff can no more sue AAA for requiring lengthy briefing than she can sue a state or

24   federal judge for the same. Plaintiff's amended complaint is the very sort of "reprisal[ ] by

---

[1]   As discussed in Wells Fargo's motion to compel arbitration, or in the alternative, to dismiss, Plaintiff voluntarily dismissed her arbitration claim on September 26, 2024, even before a merits arbitrator had been assigned to her claim. The instant lawsuit was filed that same day. ECF No. 35 at 20.

1    dissatisfied litigants" that arbitral immunity is designed to guard against. *See Corey v. New York*

2    *Stock Exchange*, 691 F.2d 1205, 1211 (6th Cir. 1982). For this reason, arbitral immunity applies,

3    and the Court should dismiss this action as to AAA.

4    **II.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR FRAUD**

5         The hurdle Plaintiff has failed to clear is the requirement of specific pleading for fraud. "In

6    California, fraud must be pled specifically; general and conclusory allegations do not suffice. Thus

7    the policy of liberal construction of the pleadings ... will not ordinarily be invoked to sustain a

8    pleading defective in any material respect. This particularity requirement necessitates pleading facts

9    which show how, when, where, to whom, and by what means the representations were tendered."

10   *Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 184 (2003) (cleaned up). In the federal courts, as

11   well, claims of fraud, even brought under state law, are subject to Rule 9(b)'s "special pleading"

12   requirement. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]hile a federal

13   court will examine state law to determine whether the elements of fraud have been pled sufficiently

14   to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be

15   stated with particularity is a federally imposed rule").

16        In California, the elements of fraud are "(a) a misrepresentation (false representation,

17   concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance;

18   (d) justifiable reliance; and (e) resulting damage." *Hinesley v. Oakshade Town Center*, 135

19   Cal.App.4th 289, 294-295 (2005) (cleaned up).

20        Plaintiff confirms she could not possibly have relied on any representations made by AAA

21   when she signed up for her Wells Fargo account, as she all but admits she did not read, or was even

22   provided with, any purported representations before doing so, arguing, "[W]hether Plaintiff read

23   AAA's statements in its rules is not material to whether she can successfully advance her fraud

24   claim." ECF No. 42 at 15. This logic is flawed: whether she was aware of such representations bears

25   directly on whether she was justified in relying on them. In other words, Plaintiff could not have

26   justifiably relied on a statement she did not have or did not read. *See Haskins v. Symantec Corp.*,

27   654 Fed.Appx. 338, 339 (9th Cir. 2016) (holding the plaintiff's fraud claim failed because she did

28   not allege she read and relied on a specific misrepresentation); *Perkins v. LinkedIn Corp.*, 53

**DEFENDANT AMERICAN ARBITRATION ASSOCIATION, INC.'S REPLY TO MOTION TO DISMISS**

1  F.Supp.3d 1190, 1120 (N.D. Cal. 2014) ("To make the reliance showing, this Court has consistently

2  held that plaintiffs in misrepresentation cases must allege that they actually read the challenged

3  representations").

4        Plaintiff's reliance on *Chapman v. Skype, Inc.*, 220 Cal.App.4th 217 (2013) (ECF No. 42 at

5  11) is misplaced. The plaintiff in *Chapman*, unlike Plaintiff here, alleged she had not read the entire

6  contract with Skype but was nevertheless aware of Skype's representation that calling plans were

7  "unlimited." Here, Plaintiff all but admits she never read the AAA rules at all, or the alleged

8  misrepresentations contained therein—meaning, unlike the plaintiff in *Chapman*, Plaintiff here was

9  not even aware of the allegedly misleading statements regarding cost-effectiveness and efficiency

10  before she signed up for a Wells Fargo account. Although Plaintiff also contends she "had already

11  been assured by Wells Fargo that she would receive a swift and efficient arbitration proceeding"

12  (ECF No. 42 at 15), this is a representation allegedly made *by Wells Fargo*, not by AAA.

13        Plaintiff also fails to demonstrate falsity. As AAA noted in its motion, the allegedly "false"

14  statements—that arbitration is "usually" cheaper and faster than going to court—are not actionable.

15  To be actionable for fraud under California law, a statement must be one of fact. *See Hauter v.*

16  *Zogarts*, 14 Cal.3d 104, 112 (1975); Cal. Civ. Code § 1710; 5 Witkin, Summary of Cal. Law (Torts),

17  § 891 (11th ed. 2024). Opinions, on the other hand, are not actionable. *Graham v. Bank of America,*

18  *N.A.*, 226 Cal.App.4th 594, 606-607 (2014). Opinions consist of, *inter alia*, statements regarding

19  quality, value, authenticity, or other matters of judgment. Witkin, § 892.

20        Plaintiff disagrees, of course, contending AAA's alleged general statements about arbitration

21  (*see* ECF No. 24 ¶¶ 48 [AAA provides a "fair, rational, faster, and less adversarial means" to handle

22  disputes], 50 [arbitration is "usually faster and cheaper" than court], 130 [AAA tries to resolve cases

23  "fairly and cost effectively"]) are so specific that they are actionable.[2] ECF No. 42 at 9-10. Plaintiff

24  is mistaken. *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111 (N.D. Cal. 2010), cited by

25   

_____

[2]      Some statements claimed by Plaintiff are plainly not actionable because they are completely
hortatory and not statements of a past or present fact. *See, e.g.*, ECF No. 24 ¶ 131 ("[p]roviders of
goods and services should develop ADR programs which entail reasonable cost to Consumers" and
"[n]o party should ever be denied the right to a fundamentally fair process due to an inability to
obtain information material to a dispute").

MK MANNING | KASS

Plaintiff, is distinguishable. In that case, the District Court considered *specific* representations and could not conclude the statements either were or were not misleading to a reasonable consumer. *Id.* at 1125-1127. Here, the general statements of quality allegedly made by AAA—that arbitration its "usually" faster and cheaper than court—are more akin to those made in *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Service, Inc.*, 911 F.2d 242 (9th Cir. 1990). In *Cook*, the challenged statements consisted of assertions that the defendant's collection services were cheaper and better than those of attorneys. *Id.* at 243-244. The Ninth Circuit affirmed the District Court's dismissal, holding the defendant's statements that its services were better or cheaper than rival services amounted to non-actionable "puffery":

> Here, the alleged misrepresentations in NCC's advertisement are merely general in nature. The statement that "we're the low cost commercial collection experts" and any implication that NCC has comparable services to attorneys at lower rates are general assertions of superiority rather than factual misrepresentations. The advertisement does not contain the kind of detailed or specific factual assertions that are necessary to state a false advertising cause of action under the Act. We agree with Magistrate Wilken that "it is beyond the realm of reason to assert ... that a reasonable consumer would interpret this as a factual claim upon which he or she could rely."

*Id.* at 246.

The instant case is no different. AAA's claims that its services are generally, or even "usually," superior to comparable services provided by the court system, are not "the kind of detailed or specific factual assertions" on which a reasonable consumer could rely. *See Cook*, 911 F.2d at 246 ("The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions"). Nor could they be, as there is no objective standard for whether an arbitrator is "fair" or "neutral" or what constitutes being "cheap" or "fast"—particularly where, as here, there are no facts alleged as to the cost of Plaintiff's arbitration or any indication at all of how long her arbitration took. *See also Newcal Industries, Inc. v. IKON Office Solution*, 523 F.3d 1038, 1053 (9th Cir. 2008) (holding that statement that IKON " 'would deliver "flexibility" in their "cost-per-copy" contracts and that they would lower copying costs for consumers' " was "classic puffery"). Plaintiff has failed to state an actionable claim for fraud.

MK MANNING | KASS

## III.    PLAINTIFF'S DERIVATIVE UCL CLAIM NECESSARILY FAILS

"The UCL [Unfair Competition Law] does not proscribe specific activities, but broadly prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. The UCL governs anti-competitive business practices as well as injuries to consumers, and has as a major purpose the preservation of fair business competition. By proscribing 'any unlawful business practice,' section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable. Because section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal.App.4th 638, 643-644 (2008) (citations omitted).

Here, the purportedly unfair, untrue, or deceptive acts alleged by Plaintiff are AAA's statements that arbitration is cheaper and more convenient than going to court and that it is a neutral and independent forum. ECF No. 24 ¶¶ 48, 50, 51, 130-132. Consequently, because AAA has no liability for these representations, as discussed *ante*, there is nothing to which to tether Plaintiff's UCL claim.[3]

Nevertheless, Plaintiff contends that AAA's *practices* are "unfair," as it allegedly did not provide "a streamlined, efficient alternative dispute resolution process." ECF No. 42 at 16. This is merely a transparent attempt to " 'plead around' an 'absolute bar for relief' simply 'by recasting the cause of action as one for unfair competition.' " *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 182 (1999). Neither *Day v. GEICO Casualty Co.*, 580 F.Supp.3d 830 (N.D. Cal. 2022) nor *Cappello v. Walmart, Inc.*, 394 F.Supp.3d 1015 (N.D. Cal. 2019), cited by Plaintiff, has any bearing on the instant case. In *Day*, the plaintiff alleged that GEICO "failed to issue adequate premium credits to capture the misclassification of risk resulting from

---

[3]    A UCL claim for unfairness based on a fraudulent representation requires actual reliance, just like a common law claim. *Perkins*, 53 F.Supp.3d at 1219-1220. Similarly, Rule 9(b)'s special pleading requirements also apply to claims for violations of the UCL. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). As noted, Plaintiff has not sufficiently alleged she relied on any representations made by AAA when she signed up for a Wells Fargo account.

COVID-19," which violated portions of the California Insurance Code prohibiting unfair premiums. *Day*, at 845. In *Cappello*, Walmart was alleged to have breached its privacy policy, which is a violation of California Business and Professions Code section 22576. *Cappello*, at 1023-1024. Plaintiff here identifies no similar statutory violation or any violation of any specific public policy which would subject AAA to liability simply because it allegedly did not provide arbitration services to Plaintiff's liking.[4] Moreover, as noted previously, the supposed "unfairness" of AAA's practices relate to the exercise of its arbitral functions, for which it is immune from suit, as whether arbitration is "efficient" or "streamlined" is a function of the arbitration process itself. *Cort*, 795 F.Supp. at 973.

Finally, Plaintiff invokes what she describes as the " 'Section 5' or 'FTC' test" for unfairness. ECF No. 42 at 12. This test, which comes from section five of the Federal Trade Commission Act, identifies the factors undergirding "unfairness" as "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Camacho v. Automobile Club of Southern Cal.*, 142 Cal.App.4th 1394, 1403 (2006) (citation omitted). The applicability of a particular test for unfairness, however, ignores the fact that a UCL claim for unfairness derived from the arbitrator's exercise of judicial authority cannot succeed *at all*. *Cel-Tech*, 20 Cal.4th at 182. Regardless of the particular test employed, Plaintiff has failed to state a claim for a violation of the UCL.

/ / /

/ / /

/ / /

---

[4]     Plaintiff contends AAA's actions violate the "policy and spirit" of the California Arbitration Act (CAA), but she does not state what specific provisions of the CAA have been violated or even how the amorphous "policy and spirit" of the CAA has been allegedly violated. ECF No. 42 at 12. In essence, Plaintiff is collaterally challenging the arbitration agreement itself by improperly suing AAA, rather than challenging the arbitration agreement at the outset or moving to set aside or modify the arbitration award, if and when any award is issued. The CAA does not provide a basis for suing AAA, and Plaintiff identifies no provision of the CAA which would do so.

**DEFENDANT AMERICAN ARBITRATION ASSOCIATION, INC.'S REPLY TO MOTION TO DISMISS**

MANNING | KASS

**IV.    CONCLUSION**

Plaintiff fails to demonstrate that any of the alleged acts undertaken by AAA occurred outside the realm of the arbitration process, and therefore, falls outside the boundaries of arbitral immunity. Even if AAA were not entitled to arbitral immunity, Plaintiff fails to demonstrate that she has sufficiently alleged either fraud or unfair conduct under the UCL. AAA's motion should be granted, and it should be dismissed from this action with prejudice.

DATED:  March 21, 2025

Respectfully submitted,

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**

By:      /s/ Mark R. Wilson
            Michael L. Smith
            Mark R. Wilson
            Attorneys for Defendant, AMERICAN
            ARBITRATION ASSOCIATION, INC.