UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARLENE WAGMAN-GELLER, individually and on behalf of all others similarly situated,,

Plaintiffs,

v.

WELLS FARGO BANK, N.A., WELLS FARGO & CO., AMERICAN ARBITRATION ASSOCIATION, INC., and DOES 1 through 5, inclusive,

Defendants.

Case No.: 25-cv-824-BJC-SBC

**ORDER:**

**(1) GRANTING DEFENDANT'S MOTION TO DISMISS [ECF Nos. 57, 58]**

**AND**

**(2) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [ECF No. 59]**

Before the Court is Defendant American Arbitration Association, Inc. (AAA) Motion to Dismiss, ECF No. 58, and Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (together, "Wells Fargo") Motion to Compel Arbitration. ECF No. 59. For the reasons stated below, the Court **GRANTS** both motions.

## I.     BACKGROUND

**A.     Current Action**

On June 24, 2011, Plaintiff Marlene Wagman-Geller opened a checking account with Wells Fargo Bank, N.A. ECF No. 59-1 at 9. When Plaintiff opened her Account, she received and agreed to be bound by the terms of Wells Fargo's Deposit Account Agreement (the "Account Agreement"). *Id.* The Account Agreement included an arbitration provision

1

(the "Arbitration Provision"), subjecting all disputes between Wells Fargo and the account holder to arbitration. ECF No. 24-3 at 36. The Arbitration Provision explained that Wells Fargo sought to resolve disputes with customers "as quickly and easily as possible" and stated that arbitration provides "a legally binding decision in a more streamlined, cost-effective manner than a typical court case." *Id.*

The Account Agreement also included a Debit Card Overdraft Service ("DCOS"), which allowed Wells Fargo to charge overdraft fees on certain debit card and ATM transactions. ECF No. 24 at 18. Plaintiff alleges that Wells Fargo assessed overdraft fees without proper disclosure or consent, in violation of the Electronic Fund Transfer Act ("Regulation E"). *Id.* On January 31, 2025, Plaintiff, through counsel, McCune Law Group ("MLG"), filed the operative First Amended Complaint ("FAC"), substituting herself as the named plaintiff after the death of the previous plaintiff (Joseph Bacigalupi). *See* ECF No. 24. Plaintiff seeks to represent multiple classes based on alleged improper overdraft fees and purported deficiencies in the arbitration process. *See id.* at 4–7.

### B.    Relevant Background

On November 25, 2020, MLG filed a class action complaint on behalf of Mosanthony Wilson ("Wilson") and all others similarly situated, alleging similar Regulation E and California UCL violations as alleged by Plaintiff. *Wilson v. Wells Fargo & Co.*, No. 3:20-cv-02307-DMS-WVG, (S.D. Cal. filed Nov. 25, 2020). On May 8, 2021, the Court granted Wells Fargo's motion to compel arbitration and stayed the litigation. *Wilson v. Wells Fargo & Co.*, 2021 WL 1853587, at *2–4 (S.D. Cal. May 10, 2021).[1]

While MLG and Wells Fargo were engaged in the *Wilson* arbitration, MLG filed 3,965 arbitration demands against Wells Fargo on behalf of customers. ECF No. 59-3 at 5. AAA informed the parties that AAA Consumer Arbitration Rules and AAA

---

[1] On September 9, 2022, the Court issued an order lifting the stay and confirming, pursuant to 9 U.S.C. § 9, the final award issued by AAA. *See Wilson v. Wells Fargo & Co.*, No. 2022 WL 4125220 (S.D. Cal. Sept. 9, 2022).

2

Supplementary Rules for Multiple Case Filings ("Supplementary Rules") would govern the proceedings.  ECF No. 59-1 at 11.  AAA also appointed a Process Arbitrator.  *Id.*

On October 27, 2022, the Process Arbitrator issued an order requiring each claimant to provide basic factual information sufficient to support a colorable Regulation E claim against Wells Fargo (the "October 27 PA Order").  *Id.* at 12.  On December 13, 2022, MLG filed a new action in this Court, seeking to overturn Process Arbitrator's order.  *Mosley v. Wells Fargo & Co.*, 2023 WL 3185790, at *2  (S.D. Cal. May 1, 2023), *aff'd*,  2024 WL 977674 (9th Cir. Mar. 7, 2024).  On May 1, 2023, this Court granted Wells Fargo's motion to compel arbitration and directed the *Mosley* plaintiffs back to arbitration.  *Mosley* DC Order, 2023 WL 3185790 (S.D. Cal. May 1, 2023).  The Court held that the October 27 PA Order was "not an award on the merits but a procedural order that addresses claim filing requirements."  *Id.* at *4.  Because the order addressed "procedure, namely pleading and filing requirements, to provide an orderly process for the [mass arbitration]—all based on [the Process Arbitrator's] interpretation of the Supplementary Rules to which the parties agreed," the Court concluded it was not a final order subject to judicial review.  *Id.*

On May 26, 2023, MLG appealed the *Mosley* DC Order.  ECF No. 59-1 at 13.  The Ninth Circuit affirmed, holding that "Wells Fargo did not act improperly or otherwise breach the agreement." *Mosley, et al. v. Wells Fargo Bank, N.A., et al.*, 2024 WL 977674, *2 (9th Cir. June 23, 2023).  The court further explained that "Wells Fargo simply sought information establishing that each Claimant had a legitimate dispute with them" and had complied with the Arbitration Provision by paying "more than half a million dollars in arbitration fees over several months of arbitration before Claimants filed their case in federal court."  *Id.*

On January 10, 2024, the Process Arbitrator dismissed 3,503 claims without prejudice for failure to comply with the minimum filing requirements.  ECF No. 59-1 at 15.  For the remaining 432 claims, AAA proceeded to appoint individual merits arbitrators.  *Id.*  On April 17, 2024, AAA began appointing arbitrators for the first 187 individual claimant arbitrations.

25-cv-824-BJC-SBC

On July 12, 2024, MLG submitted a "Notice of Suspension in Arbitration" to AAA, stating that it would suspend participation in the individual arbitrations unless AAA adopted a series of procedural changes. *Id.* at 17–18. On August 8, 2024, AAA notified the parties that it would continue administering the individual arbitrations and directed the parties to present any procedural requests to the merits arbitrator assigned to each case. *Id.* at 19. Wells Fargo alleges that MLG refused to participate in the individual arbitrations. To ensure claimants were aware of MLG's refusal to participate, Wells Fargo requested that merits arbitrators order status conferences requiring the presence of the individual claimants. *Id.* Some arbitrators granted Wells Fargo's request, while others declined. On September 26, 2024, MLG submitted notices of voluntary dismissal for all claimants who had not yet been assigned merits arbitrators, including Plaintiff. *Id.* at 20.

On October 17, 2024, AAA advised the parties that it would close, as withdrawn, 254 individual arbitrations in which no arbitrator had yet been appointed and would refund $630,000 in arbitrator compensation deposits to Wells Fargo, including the deposit associated with Plaintiff's arbitration. *Id.* AAA then administratively closed the relevant individual arbitrations and issued statements reflecting the unused arbitrator compensation to be refunded to Wells Fargo. *Id.*

### C.    Procedural History

This action was first filed in the Northern District of California on September 26, 2024. ECF No. 1. In October 2024, the original plaintiff, Joseph Bacigalupi, passed away. ECF No. 17 at 2. On December 3, 2024, the Court gave MLG until January 31, 2025, to file an amended complaint, a notice of substitution, or otherwise inform the court of the status of the case. ECF No. 18 at 6. MLG then filed the operative first amended complaint, replacing Bacigalupi with Plaintiff. ECF No. 24.

On February 13, 2025, AAA filed a motion to dismiss ECF No. 31. The following day, Wells Fargo filed a motion to transfer the case under the first-to-file rule, ECF No. 34, as well as a motion to compel arbitration or, alternatively, to dismiss the FAC. ECF No. 35. On April 4, 2025, the court granted Wells Fargo's motion to transfer and denied as

25-cv-824-BJC-SBC

moot the defendants' motions to dismiss and to compel arbitration. ECF No. 48. The case was subsequently transferred to this Court on April 7, 2025. ECF No. 49.

On April 28, 2025, Defendant AAA filed a Motion to Dismiss for failure to state a claim. ECF No. 58. On May 12, 2025, Plaintiff filed a response in opposition, ECF No. 60, and on May 23, 2025, AAA filed its reply. ECF No. 62. On May 2, 2025, Wells Fargo filed a renewed Motion to Compel Arbitration, or in the alternative, dismiss the FAC. ECF No. 59. On May 16, 2025, Plaintiff filed a response, ECF No. 61, and on May 30, 2025, Wells Fargo filed its reply. ECF No. 63. For the reasons set forth below, both the Motion to Dismiss and the Motion to Compel Arbitration are **GRANTED**.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

**B.      Motion to Compel Arbitration**

The Supreme Court has enunciated a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344 (2011) ("The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., governs the enforcement of arbitration agreements involving commerce. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In deciding whether to compel arbitration, courts limit their inquiry to two "gateway" issues: (1) whether a valid agreement to arbitrate

6

exists, and (2) whether the agreement encompasses the dispute at issue. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  "If both conditions are met, the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

The FAA further provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. District courts apply state law principles of contract formation and interpretation in determining which contracts are binding and enforceable under the FAA, if that law governs the validity, revocability, and enforceability of contracts generally.  *See Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009); *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998).  "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law.  *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).  Nevertheless, courts are directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

## III.   **DISCUSSION**

### A.   **Motion to Dismiss**

"[A]rbitrators are immune from civil liability for acts within their jurisdiction arising out of their arbitral functions in contractually agreed upon arbitration hearings." *Wasyl, Inc. v. First Boston Corp.,* 813 F.2d 1579, 1582 (9th Cir.1987) (citations omitted); *see also Lundgren v. Freeman,* 307 F.2d 104, 117–18 (9th Cir.1962).  However, "arbitral immunity does not extend to every act of an arbitrator." *Sacks v. Dietrich*, 663 F.3d 1065, 1069 (9th Cir. 2011).  Instead, "[it] extends only to those acts taken by arbitrators 'within the scope of their duties and within their jurisdiction.'" *Id.* (citing *Wasyl,* 813 F.2d at 1582).

Courts apply arbitral immunity to acts integral to the arbitration process. In *La Serena Properties, LLC v. Weisbach*, 186 Cal. App. 4th 893 (2010), the Court of Appeals

held that arbitral immunity barred claims alleging an arbitrator's failure to disclose a potential conflict of interest, rejecting the plaintiff's "creative pleading" as an unsuccessful attempt to "avoid the sting of arbitral immunity." *Id.* at 904–06. The court explained that the alleged nondisclosure constituted a quasi-judicial act performed in the course of arbitration and was therefore protected by absolute immunity. *Id.* By contrast, in *Morgan Phillips, Inc. v. JAMS/Endispute, LLC*, 140 Cal. App. 4th 795 (2006), the Court of Appeals declined to apply arbitral immunity where the arbitrator allegedly withdrew from the proceeding and failed to render any decision, reasoning that "[t]he failure to render an arbitration award is not integral to the arbitration process; it is, rather, a breakdown of that process." *Id.* at 802.

Plaintiff claims that Wells Fargo and AAA intentionally misrepresented the nature of the arbitration process to persuade consumers to agree to arbitration. ECF No. 24 at 41. First, Plaintiff alleges that AAA promoted arbitration as "more streamlined" and "cost-effective" than court litigation while knowing that the actual process they administered was "difficult, time-consuming, and expensive." *Id.* Second, Plaintiff contends that AAA promised to provide a "neutral, independent" adjudicator, but AAA knew that it had a "collusive relationship" with Wells Fargo. *Id.* at 16. In support of her theory, Plaintiff points out that AAA is allegedly influenced by law firms representing Wells Fargo and other large companies, resulting in arbitration procedures that favor corporations over consumers. ECF No. 60 at 8–9. In sum, Plaintiff seeks to void the Arbitration Provision on the ground that Defendants fraudulently induced Plaintiff and the Class Members to enter the agreement by misrepresenting the true nature of arbitration, upon which they relied to their detriment. *Id.* at 41.

In response, AAA argues that all claims against it must be dismissed because they are barred by arbitral immunity. ECF No. 58 at 8. Even if immunity did not apply, AAA contends that Plaintiff forfeited any civil claims related to conduct during arbitration because her contract with Wells Fargo incorporates AAA Consumer Arbitration Rules. *Id.* at 11. AAA also maintains that Plaintiff has not alleged sufficient facts to state a viable

fraudulent-inducement claim. *Id.* at 12. Accordingly, AAA moves for dismissal of all claims against it, with prejudice and without leave to amend. *Id.* at 16.

Here, the Court finds that arbitral immunity applies to Plaintiff's claims. Plaintiff's allegations arise from AAA's administration of the arbitration proceedings. She challenges the manner in which the arbitrations were conducted, including the scope and volume of briefing, the use of in-person depositions and hearings, allegedly duplicative discovery, and motion practice addressing common issues across multiple cases. ECF No. 60 at 13. These are case-management decisions made in the course of administering arbitration and fall squarely within the type of conduct protected by arbitral immunity. *Stasz v. Schwab*, 121 Cal. App. 4th 420, 430 (2004) (noting that arbitrators are entitled to immunity "for their activities in arriving at their award") (citations and quotation marks omitted).

Plaintiff's theory of collusion between AAA and Wells Fargo does not alter this conclusion. The conduct underlying that theory – AAA's decision to appoint a process arbitrator and the subsequent dismissal of numerous claims – likewise concern actions taken as part of the arbitral process. ECF No. 60 at 9. Even accepting Plaintiff's allegations as true, they challenge functions that are "integrally related to the arbitral process," and are therefore covered by arbitral immunity. *Thiele v. RML Realty Partners*, 14 Cal. App. 4th 1526, 1530 (1993) (citation omitted).

Accordingly, because Plaintiff's claims arise from conduct undertaken in the course of administering and resolving arbitration proceedings, they fall within the scope of arbitral immunity. Plaintiff has therefore failed to state a claim against AAA. motion to dismiss filed by AAA is GRANTED.

### B.      <u>Motion to Compel Arbitration</u>

"In determining the existence and validity of an agreement to arbitrate, a court applies a standard similar to the summary judgment standard of Fed. R. Civ. P. 56." *Lomeli v. Midland Funding, LLC*, 2019 WL 4695279 at *4 (N.D. Cal. Sept. 26, 2019) (quotations omitted). Accordingly, a court may compel arbitration only "when there is no genuine issue of material fact concerning the formation of an arbitration agreement." *Concat LP v.*

*Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004). The party seeking to compel arbitration bears "the burden of demonstrating the existence of a valid arbitration agreement by a preponderance of the evidence." *Norcia v. Samsung Telecomm. Am.*, 845 F.3d 1279, 1283 (9th Cir. 2017). Once that burden is satisfied, the burden shifts to the opposing party to establish a generally applicable contract defense rendering the agreement unenforceable. *Lim v. TForce Logistics*, LLC, 8 F.4th 992, 999 (9th Cir. 2021). One such defense is fraudulent inducement. *Filet Menu v. C.C.L. & G.,inc.*, 79 Cal. App. 4th 852, 861 (2000).

When a party raises a fraudulent-inducement defense, the Court must distinguish between challenges directed at the arbitration agreement itself and challenges to the contract as a whole. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). If the alleged fraud concerns the arbitration agreement itself, the court may decide that issue before compelling arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). However, claims that the contract as a whole was fraudulently induced must be decided by the arbitrator. *Buckeye*, 546 U.S. at 445–46. Under California law, "the elements of fraud ... are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996) (internal quotation marks and citation omitted). "Fraud in the inducement is a subset of the tort of fraud," and therefore shares the same elements. *Dhital v. Nissan N. Am., Inc.*, 84 Cal. App. 5th 828, 839 (2022).

Here, Plaintiff alleges that Defendants fraudulently induced her to agree to the Arbitration Provision itself. Because her challenge is directed at the validity of the Arbitration Provision, and not the broader contract (the Account Agreement), the Court may determine whether the Arbitration Provision is enforceable before compelling arbitration. Accordingly, the Court turns to the plaintiff's fraudulent-inducement argument.

Plaintiff argues that Wells Fargo made specific misrepresentations regarding the

efficiency and cost-effectiveness of arbitration.  According to Plaintiff, the Arbitration Provision stated that the process was "more streamlined" and "cost-effective" than a typical court case, ECF No. 24 at 51, and that disputes would be resolved "as quickly and as easily as possible." *Id.*  Plaintiff alleges that these statements were false and misleading because Wells Fargo "colluded" with AAA to subject claimants to a prolonged and burdensome arbitration process, which was delayed for over a year. *Id.*

Defendants dispute these allegations. They contend Plaintiff was not "funneled" into arbitration but rather Plaintiff's counsel voluntarily filed 4,000 claims with AAA and agreed to the application of AAA's Supplementary Rules for Multiple Case Filings.  ECF No. 63 at 5.  Defendants further argue that delays in the proceedings were attributable to MLG's repeated attempts to circumvent orders issued by the Process Arbitrator, not to any conduct by Wells Fargo.  *Id.* at 5.  In support, Defendants cite a decision of the Ninth Circuit stating that claimants had refused to comply with information requests and sought to bypass the Process Arbitrator's directives.  *See Mosley Appellate Order*, 2024 WL 977674, at *1.

### 1.    Misrepresentation

Defendant's statements that arbitration would be efficient and cost-effective are not actionable misrepresentations for two reasons.  First, under California law, statements that merely express opinions or predictions about future events are generally not actionable. *See Brakke v. Economic Concepts, Inc.*, 213 Cal. App. 4th 761, 769 (2013); *see also Nibbi Brothers, Inc. v. Home Federal Savings & Loan Assn.*, 205 Cal. App. 3d 1415, 1423 (Ct. App. 1988).  Here, Defendant's descriptions of arbitration as "streamlined" and "cost-effective" are general predictions about the common and expected benefits of arbitration, not guarantees that every arbitration will proceed without procedural complications. Second, to the extent the arbitration process became lengthy or burdensome, the delays were attributable in large part to Plaintiff's own conduct and that of her counsel.  *See Mosley Appellate Order*, 2024 WL 977674, at *1 ("Claimants have refused to comply with information requests from Wells Fargo after months of arbitration and a PA Order and now

11

seek to circumvent the PA Order.").  Accordingly, the Court finds that Defendant did not misrepresent the nature of the arbitration process.

2.        <u>Knowledge of Falsity</u>

The Arbitration Provision states that "an impartial third party will hear the dispute." ECF No. 24-3 at 36.  Plaintiff alleges that Defendant knew this statement to be false because Wells Fargo had a "collusive relationship" with AAA.  ECF No. 61 at 15.  Plaintiff highlights the involvement of Mayer Brown, a law firm that has represented Wells Fargo. Specifically, Plaintiff notes that an attorney from Mayer Brown serves on AAA's Council, *id.* at 17, which allowed the firm to influence AAA's policies and procedures in ways that favor corporate defendants.  *Id.*

Plaintiff cites two examples to support this claim. First, Plaintiff notes that Mayer Brown has represented corporate clients in cases seeking enforcement of arbitration clauses that preclude class actions.  ECF No. 24 at 16-17.  Second, Plaintiff notes that several Mayer Brown attorneys authored a publication for the U.S. Chamber of Commerce Institute for Legal Reform that discussed arbitration-related issues.  *Id.*  Plaintiff argues that these activities demonstrate a broader effort by corporate defense firms to shape arbitration practices.  *Id.*

Plaintiff also highlights the procedures used in the mass arbitration filings against Wells Fargo. According to Plaintiff, AAA assigned a "Process Arbitrator" to review a large group of arbitration demands filed against Wells Fargo.  ECF No. 61 at 17.  The Process Arbitrator subsequently ordered claimants to submit additional information, including proof of their claims and relevant account numbers, before their cases could proceed.  *Id.* Plaintiff alleges that many claimants were unable to provide the requested information, and the Process Arbitrator ultimately dismissed numerous cases for failure to satisfy these requirements.  *Id.*   Thus, Plaintiff believes the Process Arbitrator favors corporate defendants, such as Defendant Wells Fargo.  *Id.*

Defendant argues that Plaintiff has submitted no evidence showing how the alleged

25-cv-824-BJC-SBC

relationship between AAA and Mayer Brown is relevant to her individual arbitration. ECF No. 63 at 7. Defendant emphasizes that (1) the Mayer Brown attorney on AAA's Council, did not draft a policy paper on behalf of the U.S. Chamber of Commerce, (2) Mayer Brown is not involved in this case, and (3) the attorneys representing the parties here are not on AAA's Council. *Id.* at 7-8. Defendant also notes that the Chamber's publication was published in February 2023, after AAA appointed the Process Arbitrator in July 2022. *Id.* Defendant further contends that Plaintiff's allegations speak to disagreements with procedural decisions made by the Process Arbitrator rather than establishing knowledge of falsity. *Id.*

The Court finds that Plaintiff has failed to demonstrate that Defendant knowingly made a false statement. First, Defendant has debunked Plaintiff's theory that Wells Fargo's attorneys were colluding with AAA with its persuasive arguments mentioned above. Second, because Defendant's attorneys were not involved with AAA, the decision to appoint a Process Arbitrator was made solely by AAA. The appointment of a Process Arbitrator constitutes a procedural decision within the discretion of the arbitration provider, and courts do not have jurisdiction to review such procedural decisions. *See Kyocera Corp. v. Prudential-Bache T Servs.*, 341 F.3d 987, 1000 (9th Cir. 2003) (holding that procedural decisions in arbitration are not subject to judicial review). Accordingly, Plaintiff cannot prove that Defendant knew its statements regarding arbitration were false, and the Court finds that this element of fraudulent inducement is not satisfied.

### 3.    Intent to Defraud

Plaintiff asserts that Wells Fargo's primary objective in describing arbitration as "streamlined" and "cost-effective" was to induce her reliance on the Arbitration Provision in exchange for waiving her right to sue. ECF No. 24 at 41. The Court is not persuaded. Simply claiming that Wells Fargo did not deliver on a "streamlined" or "cost-effective" process is insufficient to establish that Wells Fargo intended to defraud Plaintiff. *See Tenzer v. Superscope*, 39 Cal. 3d 18 (1985) (holding that "something more than nonperformance is required to prove the defendant's intent not to perform his promise").

13

Without evidence demonstrating Defendant's intent to mislead, Plaintiff cannot show fraudulent inducement.

Plaintiff has failed to establish a claim for fraudulent inducement because she cannot demonstrate that Defendant (1) made a misrepresentation, (2) had knowledge of the falsity of any statement, or (3) intended to defraud Plaintiff.  Because Plaintiff cannot establish all elements of fraudulent inducement, the Court need not reach the remaining elements, justifiable reliance and resulting damages.  *See Kincaid v. Kincaid*, 197 Cal. App. 4th 75, 82 (Cal. Ct. App. 2011).  Based on the record before it, the Court finds that Plaintiff was not fraudulently induced into the Arbitration Provision. Accordingly, the Court grants Defendant's motion to compel arbitration.

## IV.   CONCLUSION

For the reasons stated above, the Court finds that AAA is entitled to arbitral immunity, and Plaintiff has failed to state a claim against it.  AAA's motion to dismiss is therefore **GRANTED**.  Plaintiff is granted leave to amend her complaint within 30 days of this order.

Additionally, the Court concludes that Plaintiff has not demonstrated that she was fraudulently induced into the Arbitration Provision.  Accordingly, Wells Fargo's motion to compel arbitration is **GRANTED**.  The parties are directed to proceed under the terms of the Arbitration Provision, and the matter is **STAYED** pending the completion of arbitration. The parties are **ORDERED** to notify the Court within 14 days of the resolution of arbitration.

Dated:  March 30, 2026

Honorable Benjamin J. Cheeks
United States District Judge

14

25-cv-824-BJC-SBC